*In re* APPLICATION OF MICHIGAN CONSOLIDATED
GAS COMPANY TO INCREASE RATES

Docket Nos. 298830 and 298887. Submitted July 6, 2011, at Lansing.
Decided July 21, 2011, at 9:05 a.m. Amended, 293 Mich App 801.
Applications for leave to appeal and Michigan Consolidated Gas
Company's applications for leave to cross-appeal dismissed, Attor-
ney General application for leave to cross-appeal denied, 491 Mich
___.

Michigan Consolidated Gas Company (Mich Con) filed an application in
the Public Service Commission (PSC) requesting a rate increase on
an annual basis; continued authority to use, with modifications, its
existing uncollectible expense true-up, or tracking, mechanism
(UETM); and confirmation that it had properly followed a PSC
directive to propose a Low-Income and Energy Efficiency Fund
(LIEEF) contribution as part of its next general rate case filing. The
Association of Businesses Advocating Tariff Equity (ABATE), the
Attorney General, and Utility Workers Union of America AFL-CIO,
Local 223 intervened. Following evidentiary hearings, the PSC ap-
proved continued use of the UETM (which was intended to adjust
future rates to make up for 80 percent of the difference between Mich
Con's estimated and actual burdens in connection with customers
from whom it could not collect amounts due on their bills), approved
an increase in the base level of uncollectible expenses to $69.9 million,
and rejected the Attorney General's objections that such tracking
mechanisms are not statutorily authorized. In addition, the PSC also
approved $5.069 million in test-year funding for the LIEEF and
rejected the objection that the Legislature had repealed the legisla-
tion that authorized the funding. ABATE and the Attorney General
appealed separately, and the Court of Appeals consolidated the
appeals.

The Court of Appeals *held*:

1. Retroactive ratemaking in utility cases is prohibited absent
statutory authorization, but retroactive ratemaking does not occur if
only future rates are affected. The PSC may properly use accounting
conventions whereby certain expenses dating from one year are
characterized as expenses incurred in a subsequent year to which
they are then deferred because the expense is recovered on a
prospective basis only. The PSC properly approved Mich Con's use of
the UETM, which did not constitute retroactive ratemaking.

2. The Customer Choice and Electricity Reliability Act, MCL 460.10 *et seq.*, originally required the PSC to establish standards for the use of the LIEEF, as well as secure funding for the program. As amended by 2008 PA 286, the act no longer refers to a LIEFF, but MCL 460.9p(3), added by 2009 PA 172, directs that certain civil fines be deposited in the LIEEF, and the act appropriating money for the PSC for fiscal year 2009-2010 included an appropriation for the LIEFF and required the PSC to perform certain administrative actions with respect to the fund. Deletion of all references to the LIEEF from the Customer Choice and Electricity Reliability Act indicated a legislative intent to withdraw any obligation or prerogative on the part of PSC-regulated utilities to raise money for that fund. Moreover, MCL 460.6a(2) does not grant the PSC authority to approve a utility's collecting such funds. The PSC did not have statutory authority to approve funding for the LIEEF.

Affirmed in part, reversed in part, and remanded.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATEMAKING AUTHORITY.·

Retroactive ratemaking in utility cases is prohibited absent statutory authorization; it does not occur if only future rates are affected with no adjustment to previously set rates; the Public Service Commission (PSC) may approve accounting conventions whereby certain expenses dating from one year are characterized as expenses incurred in a subsequent year to which they are then deferred; the PSC's approval of a tracking mechanism designed to reconcile recovery of a utility's estimated and actual losses stemming from customers from whom the utility cannot collect amounts due on their bills does not constitute retroactive ratemaking as the deferred expense is recovered on a prospective basis.

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — LOW-INCOME AND ENERGY EFFICIENCY FUND — AUTHORITY TO ORDER FUNDING.

The Public Service Commission does not have statutory authority to administer and order funding by utilities of the Low-Income and Energy Efficiency Fund originally created by the Customer Choice and Electricity Reliability Act (MCL 460.10 *et seq.*, MCL 460.6a[2]).

*Clark Hill PLC* (by *Robert A. W. Strong, Roderick S. Coy,* and *Leland R. Rosier*) for the Association of Businesses Advocating Tariff Equity.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, and *Steven D. Hughey, Kristin M. Smith,*

and *Anne M. Uitvlugt*, Assistant Attorneys General, for the Public Service Commission.

*Fahey Schultz Burzych Rhodes PLC* (by *William K. Fahey* and *Stephen J. Rhodes*), *Bruce R. Maters*, and *Richard P. Middleton* for Michigan Consolidated Gas Company.

*Bill Schuette*, Attorney General, and *S. Peter Manning* and *Michael E. Moody*, Assistant Attorneys General, for the Attorney General.

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *John R. Canzano*), for Utility Workers Union of America, AFL-CIO, Local 223.

SAAD, P.J., and JANSEN and DONOFRIO, JJ.

DONOFRIO, J. In these consolidated cases, appellants, the Association of Businesses Advocating Tariff Equity (ABATE) and the Michigan Attorney General, appeal as of right an order of the Michigan Public Service Commission (PSC) that allowed petitioner, Michigan Consolidated Gas Company (Mich Con), to include through charges applied to its ratepayers more than $5 million in funding for the Low-Income and Energy Efficiency Fund (LIEEF). The Attorney General additionally appeals that part of the order that allowed Mich Con to continue to use an uncollectible expense true-up, or tracking, mechanism (UETM) as a way to reconcile recovery of estimated and actual losses stemming from customers who fail to pay their bills. We affirm the PSC's decision to allow Mich Con to continue using its UETM, but reverse the PSC's decision to allow Mich Con to charge its ratepayers for funding of the Low-Income and Energy Efficiency Fund.

I. FACTS

The PSC's opinion and order in this case contains the following concise statement of the facts:

> On June 9, 2009, Michigan Consolidated Gas Company (Mich Con) filed an application requesting a $192.639 million rate increase on an annual basis, and other relief based on the use of a 2010 projected test year. The other forms of regulatory relief initially sought by Mich Con included continuation of authority to use its existing uncollectible expense true-up mechanism (UETM) with modifications . . . . In addition, Mich Con sought confirmation from the Commission that the company had satisfied directives set forth in the Commission's orders in Case Nos. U-13898, U-13899, and U-15479. These directives included . . . the obligation to propose a Low-income and Energy Efficiency Fund (LIEEF) contribution as part of its next general rate case filing.
>
> . . . At the prehearing conference, the ALJ granted petitions for leave to intervene filed by the Association of Businesses Advocating Tariff Equity (ABATE), Attorney General Michael A. Cox (Attorney General) . . . [and] the Utility Workers Union of America, AFL-CIO, Local 223 (Local 223), [among others.] The Commission Staff (Staff) also participated in the proceedings.
>
> \* \* \*
>
> . . . In the absence of a Commission order directing it to do otherwise, on January 1, 2010, Mich Con self-implemented a $170 million increase in its gas rates that was applied on an equal percentage basis for all customer classes.
>
> \* \* \*
>
> Evidentiary hearings concerning the remainder of Mich Con's general rate case took place on January 11, 12, and 14, 2010. The company presented the testimony and exhibits of an additional 22 witnesses, and the Staff offered

testimony and exhibits from 13 witnesses. . . . The record
of this proceeding consists of 1,866 pages of transcript and
112 exhibits that were received into evidence.[1]

The PSC approved the continued use of the UETM
intended to adjust future rates to make up for 80
percent of the difference between Mich Con's estimated
and actual burdens in connection with customers from
whom it could not collect amounts due on their bills,
approved a base level of uncollectible expenses of $69.9
million, and rejected the Attorney General's objections
that such tracking mechanisms are not statutorily
authorized. The PSC also approved $5,069,000 in test-
year funding for the LIEEF and rejected appellants'
objections that the Legislature had repealed the legis-
lation authorizing such funding in the first instance.

This appeal followed.

## II. STANDARDS OF REVIEW

All rates, fares, charges, classifications, joint rates,
regulations, practices, and services prescribed by the
PSC are presumed prima facie to be lawful and reason-
able. MCL 462.25; see also *Mich Consol Gas Co v Pub
Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210
(1973). A party aggrieved by an order of the PSC has the
burden of showing by clear and satisfactory evidence
that the order is unlawful or unreasonable. MCL
462.26(8). To establish that a PSC order is unlawful, the
appellant must show that the PSC failed to follow a
statutory requirement or abused its discretion in the
exercise of its judgment. *In re MCI Telecom Complaint*,
460 Mich 396, 427; 596 NW2d 164 (1999).

---

[1] *In re Application of Michigan Consolidated Gas Co to Increase Rates*,
order of the Public Service Comm, entered June 3, 2010 (Case No.
U-15985), pp 1-4.

A final order of the PSC must be authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *In re Consumers Energy Co*, 279 Mich App 180, 188; 756 NW2d 253 (2008). A reviewing court gives due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999).

Issues of statutory interpretation are reviewed de novo. *In re Rovas Complaint Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008). A reviewing court should give an administrative agency's interpretation of statutes it is obliged to execute respectful consideration, but not deference. *Id.* at 108.

Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. *In re Pelland Complaint Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

III. UNCOLLECTIBLE EXPENSE TRUE-UP MECHANISM

The UETM addresses the utility's burden in supplying power to customers from whom it cannot collect.[2] Mich Con sought to change its base level of uncollectible expenses from $37.3 million to $69.9 million to reflect its recent experience with increasing numbers of customers from whom it could not collect. Mich Con had been using its UETM to ensure its recovery of 90 percent of unpaid bills—less than 100 percent so that the utility would retain an incentive to expend efforts to collect from its customers. However, the hearing referee proposed adjusting that recovery rate to 80 percent on

[2] See *In re Mich Consol Gas Co Application*, 281 Mich App 545, 546 n 1; 761 NW2d 482 (2008).

the ground that Mich Con had shown something less than due diligence in the matter. The PSC accepted the higher figure for the base rate of uncollectible expenses and accordingly approved a continuation of the UETM, while adopting the referee's recommendation to shift Mich Con's risk factor from 90 to 80 percent. It is not in dispute that all cost-tracker mechanisms operate by comparing actual revenues to the base revenues approved by the PSC for the purpose of adjusting future rates to compensate for the differences.

Retroactive ratemaking in utility cases is prohibited, absent statutory authorization. *Mich Bell Tel Co v Pub Serv Comm*, 315 Mich 533, 547, 554-555; 24 NW2d 200 (1946). The Attorney General argues that use of the challenged tracking mechanism runs afoul of that principle. But retroactive ratemaking does not occur if only future rates are affected, with no adjustment to previously set rates. *Attorney General v Pub Serv Comm*, 262 Mich App 649, 655, 658; 686 NW2d 804 (2004).

This Court recently reiterated its approval of the PSC's use of the accounting convention whereby certain expenses dating from one year are characterized as expenses incurred in a subsequent year to which they are then deferred. *In re Consumers Energy Co Application for Rate Increase*, 291 Mich App 106, 114; 804 NW2d 574 (2010), citing *Attorney General*, 262 Mich App at 658.

This Court has specifically approved Mich Con's use of a UETM on the ground that

> the UETM, designed to defer . . . the difference between the initially projected and the actual uncollectible expenses for a given period to a future year, does not involve retroactive ratemaking because the deferred expense is deemed an expense of the year to which it is deferred and,

> thus, is recovered on a prospective basis. [*In re Mich Consol Gas Co Application*, 281 Mich App 545, 549; 761 NW2d 482 (2008).]

This weight of authority compels affirmance of the PSC's approval of Mich Con's use of the UETM.

### IV. THE LOW-INCOME AND ENERGY EFFICIENCY FUND

The Customer Choice and Electricity Reliability Act, MCL 460.10 *et seq.*, was enacted by 2000 PA 141, with an effective date of June 5, 2000. *Consumers Energy*, 279 Mich App at 182-183. The act in part created the LIEEF, the purpose of which was " 'to provide shut-off and other protection for low-income customers and to promote energy efficiency by all customer classes.' " *Id.* at 183, quoting MCL 460.10d(7).

As originally enacted, MCL 460.10d(6)—redesignated as MCL 460.10d(7) by 2002 PA 609—required the PSC to "establish standards for the use of the [LIEEF] . . . ." See also *In re Consumers Energy*, 279 Mich App at 190. That subsection further commanded the PSC to "issue a report to the legislature and the governor every 2 years regarding the effectiveness of the fund." Former MCL 460.10d(6). The subsection also provided for funding the LIEEF through "securitization savings exceed[ing] the amount needed to achieve a 5% rate reduction for all customers . . . for a period of 6 years," *id.*, but this Court has declared that the latter provision did not limit the PSC's options for funding the LIEEF after the running of that six-year period, *Consumers Energy*, 279 Mich App at 191. However, MCL 460.10d was amended by 2008 PA 286, effective October 6, 2008, with the result that the Customer Choice and Electricity Reliability Act no longer refers to a LIEEF. Appellants assert that the legislative debates attendant on the enactment of the 2008 legislation included a proposal to authorize a LIEEF factor and

extend LIEEF requirements to all Michigan utilities, but this proposal did not win passage.

Yet MCL 460.9p(3), added by 2009 PA 172, effective December 15, 2009, directs that civil fines assessed against municipally owned electric or natural gas utilities be deposited "in the low income and energy efficiency fund." And the appropriations act that appropriated funds for the PSC for the 2009-2010 fiscal year, 2009 PA 130, included provisions for the LIEEF. In particular, § 114 of the act listed an appropriation of $90 million for "[l]ow-income energy efficiency assistance," along with one for the same amount for "[l]ow-income energy efficiency fund[.]" Section 361(1) of the act in turn called upon the PSC to "implement a process for the low-income energy efficiency fund grants that shall require an application deadline of May 1 and the award announcements on October 1 of each year," while § 361(2) required the PSC to "report by November 1, 2009 to the subcommittees, the state budget office, and the fiscal agencies on the distribution of funds appropriated in part 1 [of the act] for the low-income/energy efficiency assistance program."

If this recent legislative activity indicates the Legislature's intention that the LIEEF continue to exist, and that the PSC retain some role in managing it, the deletion of all references to the LIEEF from the Customer Choice and Electricity Reliability Act—whose now-deleted provisions were recognized as the fund's enabling legislation in the first instance, see *Consumers Energy*, 279 Mich App at 183—nonetheless indicates a legislative intent to withdraw any obligation, or prerogative, on the part of PSC-regulated utilities to raise money for that fund. See *Ford Motor Co v Unemployment Compensation Comm*, 316 Mich 468, 473; 25 NW2d 586 (1947) ("The court is not at liberty to read

into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used.").

Moreover, while MCL 460.6a(2) grants the PSC authority to establish procedures for considering and deciding petitions from regulated utilities and allow a utility to recover its reasonably and prudently incurred costs, it does not grant the PSC authority to approve a utility's collecting funds from its ratepayers in general to fund a program designed to offer some protection against interruptions in services, or other such relief, to distressed ratepayers. That activity has less to do with regulating a utility than with helping the poor. Similarly, a program to promote energy efficiency in general has more to do with environmentalism and conservation than with assessing a utility's reasonably and prudently incurred costs.

For these reasons, we hold that administration of a LIEEF does not fall within the scope of the PSC's general statutory powers, but depends in every instance on specific statutory authorization. Accordingly, we reverse the PSC's order below insofar as it approved more than $5 million in LIEEF funding to come from Mich Con's ratepayers and remand this case to the PSC for appropriate proceedings consistent with this opinion with respect to the LIEEF, and any remaining implementation regarding the UETM adjustment.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. Because no party has prevailed in full, we do not award costs pursuant to MCR 7.219.

SAAD, P.J., and JANSEN, J., concurred with DONOFRIO, J.