# STATE OF MICHIGAN

# COURT OF APPEALS

TERRANCE D. TRAHEY,

　　　　　Plaintiff-Appellee,

v

CITY OF INKSTER,

　　　　　Defendant-Appellant.

FOR PUBLICATION
August 18, 2015
9:10 a.m.

Nos. 320161; 324564
Wayne Circuit Court
LC No. 13-001822-CK

Before: OWENS, P.J., and SAAD and GADOLA, JJ.

GADOLA, J.

This case involves plaintiff Terrance D. Trahey's challenge to the water and sewer rates established by the city of Inkster (the "city"), commencing July 1, 2012. Plaintiff also challenged a bill he received for water and sewer services in July 2012 for $6,903.64[1] after the city installed a new water meter at plaintiff's home and determined that the new meter had a higher reading than the outside meter used to determine plaintiff's prior billings.

In Docket No. 320161, the city appeals as of right a January 23, 2014 judgment, entered following a bench trial. As part of that judgment, the court reduced water and sewer rates for the period beginning July 1, 2012, to the date of the judgment, required that residents be refunded the differences in the rates through a water/sewer credit, and held that the city was estopped from collecting the amount billed to plaintiff for the usage determined from the inside meter in July 2012. In Docket No. 324564, the city appeals, by delayed leave granted, two postjudgment orders entered in response to plaintiff's motion to show cause why the city was not complying with the January 23, 2014 judgment.[2] In an order dated June 4, 2014, the trial court determined

---

[1] According to city treasurer Mark Stuhldreher, the Inkster city council later reduced plaintiff's bill to reflect the rate in effect on June 30, 2011, rather than the rate in effect at the time of the 2012 meter reading.

[2] This Court's order granting the application in Docket No. 324564 states, in part, the following:

> Defendant requests that this Court "grant leave and address in one proceeding all issues relating to its rate increase" and raised no substantive legal issues in this

-1-

that the city was not in compliance with the January 23, 2014 judgment and ordered the city to follow the terms of the judgment. In an order dated June 16, 2014, the trial court determined that each of the 8,425 resident water/sewer accounts should be credited $303.78 by June 27, 2014, based on a total credit amount of $2,559,321.63. In Docket No. 320161, we reverse the portion of the trial court's January 23, 2014 judgment reducing the city's water and sewer rates, but remand for further proceedings on the issue of plaintiff's July 2012 water and sewer bill. In Docket No. 324564, we vacate the trial court's June 4 and June 16, 2014 postjudgment orders in their entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action in February 2013, bringing it as a class action, but it was never certified as a class action. Plaintiff's second amended complaint alleged that the city's decision to raise the combined water and sewer rate to $14.64 per unit of water usage violated both the Headlee Amendment, Const 1963, art 9, §§ 25 and 31, and Section 14.3 of the Inkster Charter, which required just and reasonable rates. Plaintiff also alleged that the Inkster city council was grossly negligent by voting to purchase new "smart" water meters without first researching the health concerns and technical problems associated with the meters. Plaintiff asserted that the old metering system consisted of an inside meter connected to an outside meter, which a city employee could read without entering the business or residential property. He alleged that the city was unjustly enriched by charging businesses and residential customers for differences between the inside and outside readings after the new "smart" meters were installed or, alternatively, by using the newly established rate of $14.64 to calculate the charge.

When plaintiff filed his second amended complaint, the trial court also granted plaintiff's request for a preliminary injunction, which precluded the city from shutting off water and sewer services for business and residential customers so long as the customers paid their quarterly water bills at a rate of $12.73 per unit. In June 2013, the trial court granted the city's motion for summary disposition with respect to plaintiff's claim that the water and sewer rate violated the Headlee Amendment, but denied summary disposition with respect to plaintiff's claims under the Inkster Charter and for unjust enrichment. Plaintiff then filed a third amended complaint asserting only claims based on the Inkster Charter and unjust enrichment.

At trial, the city's counsel advised the court that if it determined the city's water and sewer rates were unreasonable, any reduction to the rates would be credited to all residents, regardless of whether the case was certified as a class action. Evidence presented at trial established that the city had entered into a consent agreement with the state of Michigan under former 2011 PA 4[3] before raising the combined water and sewer rate to $14.64, effective July 1,

> application. Therefore, this appeal is limited to the issues raised in the claim of appeal in Docket No. 320161, *Terrance D Trahey v City of Inkster*, and no additional substantive legal issues may be raised. [*Trahey v City of Inkster*, unpublished order of the Court of Appeals, entered December 29, 2014 (Docket No. 324564).]

[3] The consent agreement specified that in the event 2011 PA 4 was repealed or rendered ineffective, the agreement would "continue in full force and effect under any successor statute

2012. As part of the consent agreement, the city adopted a deficit elimination plan (DEP) for various accounts, including the account associated with the water and sewer department. Testimony revealed that $5.36 of the $14.64 per unit combined water and sewer rate accounted for the "negative cash assets"/DEP component of the rate.

The trial court determined that, as a result of past improper borrowing between the city's various funds, at least some of the water and sewer department's debt was not attributable to past water and sewer costs. The court concluded that the "negative cash assets"/DEP component of the water and sewer rate should therefore be reduced by 50% under a theory of unjust enrichment, which would reduce the water and sewer rate of $14.64 by $2.68 per unit. After plaintiff's counsel informed the court that the water and sewer rates had again increased effective July 1, 2013, the trial court determined that the "negative cash assets"/DEP component of that rate should also be reduced by 50% and refunded to the city's residents.

With respect to plaintiff's claim regarding his July 2012 water bill, the trial court determined that the city was equitably estopped from collecting any charge for past unpaid water usage because when plaintiff purchased his home in 2011, he received information that the title company handling the closing for the sale found no outstanding water bill with the city. Therefore, the trial court determined that the city would be unjustly enriched if it was allowed to collect for the past unpaid usage from plaintiff.

Following a bench trial, on January 23, 2014, the trial court entered a judgment requiring the city to refund residents the differences in the water and sewer rates over the applicable 16-month period through a water/sewer credit. The court also ordered the city to issue plaintiff a $3,389.14 credit to his water/sewer account for the improper July 2012 water bill. The city appealed that judgment in Docket No. 320161.

In April 2014, while the city's appeal was pending before this Court, plaintiff filed a motion to show cause, contending that the city was not in compliance with the January 23, 2014 judgment. At a hearing on June 2, 2014, the city's counsel informed the trial court that the city credited plaintiff's water/sewer account in May 2014 for the entire amount awarded in the judgment. However, the court found that the city was not in compliance with the other aspects of the judgment. On June 4, 2013, the court ordered the city to issue the appropriate credits to the city's residents for the reduced water and sewer rates. The court also ordered the city's treasurer to appear to address the city's failure to pay attorney fees and costs to plaintiff's counsel pursuant to a separate January 23, 2014 order. On June 16, 2014, the court ordered the

providing for consent agreements or similar forms of agreement." 2011 PA 4 was suspended in August 2012. *Bd of Trustees of the City of Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust v City of Pontiac*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 316418); slip op at 7. At a subsequent general election in November 2012, the electors rejected 2011 PA 4. As a result, the Local Government Fiscal Responsibility Act, 1990 PA 72, MCL 141.1201 *et seq.*, was revived. *Martin v Murray*, 309 Mich App 37, 41-42; ___ NW2d ___ (2015) (Docket No. 319509). The revived act, 1990 PA 72, was later repealed and replaced by the Local Financial Stability and Choice Act, 2012 PA 436, MCL 141.1541 *et seq.*, effective March 28, 2013. *Pontiac Bd of Trustees*, ___ Mich App at ___; slip op at 7.

city to credit each of the 8,425 resident water/sewer accounts $303.78, based on a total credit amount of $2,559,321.63.

## II. MOOTNESS

As a preliminary matter, plaintiff argues that the city's appeal of the January 23, 2014 judgment is moot because the city complied with the terms of the trial court's June 16, 2014 order, thereby satisfying the terms of the January 2014 judgment. Plaintiff adds that, with respect to the city's appeal in Docket No. 324564, the city's challenge to the portion of the judgment resolving his responsibility for his July 2012 water bill is also moot because the city credited the appropriate amount before the trial court entered the June 4 and June 16, 2014 orders. The city concedes that it made the credits required by the June 16, 2014 order, but argues that this appeal is not moot because the credits were made involuntarily.

An issue is moot when "an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). A voluntary satisfaction of a judgment may render a case moot. *Horowitz v Rott*, 235 Mich 369, 372; 209 NW 131 (1926). If, however, the judgment is involuntarily satisfied, the appeal is not moot. See *Becker v Halliday*, 218 Mich App 576, 578-580; 554 NW2d 67 (1996); see also *Kusmierz v Schmitt*, 268 Mich App 731, 740 n 3; 708 NW2d 151 (2005), rev'd in part on other grounds 477 Mich 934 (2006). Generally, "payment or performance following the invocation or threatened exercise of a court's contempt power should not be regarded as voluntary or as constituting a waiver of the right to challenge the court's order." *Indus Lease-Back Corp v Romulus Twp*, 23 Mich App 449, 452; 178 NW2d 819 (1970).

In this case, the city filed its appeal from the court's January 23, 2014 judgment before the trial court entered the June 2014 postjudgment orders requiring compliance with the judgment. This Court denied the city's motion for a stay pending the appeal of that judgment. *Trahey v City of Inkster*, unpublished order of the Court of Appeals, entered April 16, 2014 (Docket No. 320161), and the city's motion for reconsideration of that order was denied shortly before the trial court entered the June 16, 2014 order, *Trahey v City of Inkster*, unpublished order of the Court of Appeals, entered June 12, 2014 (Docket No. 320161).

The trial court's June 16, 2014 order effectively modified the January 23, 2014 judgment by requiring the city to apply a uniform credit of $303.78 for each water/sewer account by June 27, 2014, rather than a credit computed based on the actual units of water usage or any provision for the credit to be applied pro rata over a 16-month period. The city's "form and content" approval of the June 16, 2014 order, combined with the parties' agreement on appeal that the requisite credits were made, might signal that the city agreed to the modified remedy for the trial court's determination that the city's water and sewer rates were unreasonable. However, it does not signal the city's agreement with trial court's finding of unreasonableness or its decision that residents were entitled to refunds. *Ahrenberg Mech Contracting, Inc v Howlett*, 451 Mich 74, 77-78; 545 NW2d 4 (1996) (holding that where there is no indication that a party's "form and content" approval of an order signals the party's agreement with the order, it is not appropriate to treat the order as an unappealable consent order). Therefore, the city's "form and content" approval of the June 16, 2014 order does not render this appeal moot. Further, considering that the modified remedy and its satisfaction occurred only after plaintiff sought to invoke the trial

-4-

court's contempt power, the city's compelled satisfaction of the June 16, 2014 order does not render moot its challenge to the trial court's finding of reasonableness.

We reach this same conclusion with respect to the city's challenge to the trial court's decision to estop the city from collecting water and sewer charges from plaintiff, considering the record evidence that the city did not apply a credit to plaintiff's water and sewer account until after this Court denied the city's motion for a stay and after plaintiff filed his motion to show cause. The city's action in applying the credit under these circumstances cannot be considered voluntary or as otherwise waiving the right to challenge the January 23, 2014 judgment. *Indus Lease-Back Corp*, 23 Mich App at 452.

## III. STANDARD OF REVIEW

This Court reviews a trial court's factual findings in a bench trial for clear error, and reviews its conclusions of law de novo. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* at 251. To the extent that our review requires the interpretation of a statute, our review is also de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The interpretation of a city charter provision is reviewed de novo. *Barrow v Detroit Election Comm*, 301 Mich App 404, 411; 836 NW2d 498 (2013).

A trial court's application of equitable doctrines is also reviewed de novo. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013). Unjust enrichment is an equitable doctrine. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). But, whether a specific party has been unjustly enriched generally involves a question of fact. *Id*.

## IV. WATER AND SEWER RATES

The city first challenges the trial court's finding that its water and sewer rates were unreasonable under Section 14.3 of the Inkster Charter, which provides the following:

> The council shall have the power to fix from time to time such just and reasonable rates and other charges as may be deemed advisable for supplying the inhabitants of the city and others with such utility services as the city may provide. There shall be no discrimination in such rates within any classification of users thereof, nor shall free service be permitted. Higher rates may be charged for service outside of the corporate limits of the city.

The Inkster Charter does not provide any standards for determining "just and reasonable rates." "The determination of 'reasonableness' is generally considered by courts to be a question of fact." *City of Novi v Detroit*, 433 Mich 414, 431; 446 NW2d 118 (1989). Michigan courts have long recognized the principle that municipal utility rates are presumptively reasonable. *Id.* at 428. This presumption exists because "[c]ourts of law are ill-equipped to deal with the complex, technical processes required to evaluate the various cost factors and various methods of weighing those factors required in rate-making." *Id.* at 430. However, the presumption of reasonableness may be overcome by a proper showing of evidence. *Jackson Co v City of Jackson*, 302 Mich

App 90, 109; 836 NW2d 903 (2013). The burden of proof is on the plaintiff to show that any given rate or rate-making practice is unreasonable. *City of Novi*, 433 Mich at 432-433.

To begin, the trial court clearly misconstrued the facts and law in ordering the city to reduce its combined water and sewer rate by 50% of the "negative cash assets"/DEP component of the rate. The trial court determined that this portion of the city's water and sewer rate was unreasonable because it was not really attributable to debt for water and sewer expenses. The trial court based its decision on information contained in a March 1, 2012 report from the Governor's financial review team, which indicated that improper interfund transfers had occurred between several of the city's departments. The trial court stated that it could not determine what portion of the water and sewer department's debt was attributable to improper interfund transfers, and asserted that state accountants could not determine how much money was borrowed between city departments. Nonetheless, the court settled on the figure of 50% of the water and sewer rate's "negative cash assets"/DEP component by which to reduce the rate. The court reasoned, "I think all you can do is try to get a reasonable amount of what was attributable to non water and sewage debt and then subtract that amount from $14.64."

Absent clear evidence of illegal or improper expenses included in a municipal utility's rates, a court has no authority to disregard the presumption that the rate is reasonable. See *Jackson Co*, 302 Mich App at 109. In this case, the trial court openly acknowledged that it could not specifically identify what amount, if any, of the water and sewer rate accounted for expenses unrelated to water and sewer. Our review of the March 1, 2012 report of the financial review team relied upon by the trial court reveals that the court's conclusions were unfounded. The report does not contain a determination that a portion of the water and sewer department's debt was attributable to expenditures for purposes other than water and sewer, nor did the financial review team analyze any of the water and sewer rates.

The March 1, 2012 report summarized a preliminary review conducted by the Michigan Department of Treasury. One of the summarized matters addressed the city's use of a pooled bank account to manage cash. The summary contained a table indicating that the water and sewer department had a cash deficit balance as of September 30, 2011. Although the report stated that it could not be determined "which fund owed another" because the cash was pooled, the report indicated that "it could be presumed that each negative balance had drawn a proportional amount from each fund with a positive balance." In other words, the report indicated that the water and sewer department was a borrower, not a supplier, of restricted funds to pay bills for other departments. We find no evidentiary support for the trial court's finding that a part of the "negative cash assets"/DEP component of the water and sewer rate was attributable to debt for expenses unrelated to water and sewer, let alone that the amount owed for unrelated expenses was $2.68 per unit. The trial court clearly erred in finding the city's water and sewer rate was unreasonable on these grounds.

Alternatively, plaintiff argues that the water and sewer rate was unreasonable because it was not based on the actual costs of service because the "negative cash assets"/DEP portion of the rate covered debt for past, rather than current, expenses. In essence, plaintiff is arguing that the city engaged in impermissible retroactive ratemaking. Plaintiff also cites MCL 123.141(3), which provides that "[t]he retail rate charged to the inhabitants of a city, village, township, or

-6-

authority which is a contractual customer as provided by subsection (2) shall not exceed the actual cost of providing the service."[4]

MCL 123.141 does not alter the general standard of reasonableness applied by courts when reviewing utility rates. *City of Novi*, 433 Mich at 431-432. Because of the difficulties inherent in ratemaking and the limitations on judicial review, the phrase "actual cost of providing the service" does not mean exactly equal to the actual costs of providing the service. *Id.* Thus, while a utility fee must be reasonably proportionate to the direct and indirect costs of providing the service for which the fee is charged, mathematic precision is not required. *Jackson Co*, 302 Mich App at 109.

We disagree with plaintiff that the portion of the water and sewer rate accounting for "negative cash assets"/DEP was not part of the city's actual cost of providing water and sewer services. Although ratemaking is a prospective operation, *Mich Bell Tel Co v Pub Serv Comm*, 315 Mich 533, 547; 24 NW2d 200 (1946), past expenses and costs may be taken into account when determining a new utility rate, *In re Application of Consumers Energy Co for Rate Increase*, 291 Mich App 106, 113; 804 NW2d 574 (2010). When a rate structure is wrong and causes a loss, the rate may be raised so that the loss will not continue. *In re Application of Consumers Energy Co for Rate Increase*, 291 Mich App at 113. Timely payment of the water and sewer department's debt was necessary for its continued operation, and therefore constituted part of the actual cost of providing the service. Plaintiff has not provided evidence showing that the method chosen by the city to maintain its operations and repay its debts was unreasonable, and absent evidence of impropriety, we will not independently scrutinize the municipal rate-making methods employed by the city. *City of Novi*, 433 Mich at 429.

We also disagree that inclusion of the "negative cash assets"/DEP component in the city's water and sewer rates constituted retroactive ratemaking. "[R]etroactive ratemaking does not occur if only future rates are affected, with no adjustments to previously set rates." *In re Application of Mich Consol Gas Co to Increase Rates*, 293 Mich App 360, 366; 810 NW2d 123 (2011), citing *Attorney General v Pub Serv Comm*, 262 Mich App 649, 655, 658; 686 NW2d 804 (2004). Previously established water and sewer rates were not adjusted in this case, and inclusion of the "negative cash assets"/DEP component was necessary for the continued operation of the city's water and sewer department. Plaintiff has not shown that the water and sewer rates were unreasonable or unlawful. Therefore, we reverse the trial court's determination regarding the rates and remand for entry of a judgment of no cause of action in favor of the city with respect to plaintiff's claim that the water and sewer rates violated the Inkster Charter.

In light of our decision, we also reverse the trial court's unjust enrichment finding, which was predicated on the court's erroneous evaluation of the water and sewer rates. In addition, we need not address the city's arguments concerning statutory preemption and the separation-of-

---

[4] MCL 123.141(2) exempts a water department that is not a contractual customer of another water department and that serves less than 1% of the state population from the cost-based requirements of MCL 123.141(2). See *Oneida Charter Twp v City of Grand Ledge*, 485 Mich 859; 771 NW2d 785 (2009).

powers doctrine, or the city's challenge to the trial court's decision under a proposed arbitrary and capricious standard. It is also unnecessary to address the city's challenge to the trial court's pretrial ruling denying its motion for summary disposition with regard to the reasonableness of the water and sewer rates under the Inkster Charter. Lastly, because the city's original water and sewer rates were reasonable, we vacate the June 4, 2014 postjudgment order requiring the city to follow the terms of the January 23, 2014 judgment by adjusting water and sewer rates and crediting the difference to all customers' accounts, and we vacate the June 16, 2014 postjudgment order, which imposed an amended remedy requiring the city to credit each of the 8,425 resident water/sewer accounts $303.78.

## V. PLAINTIFF'S JULY 2012 BILL

The city also challenges the trial court's determination that the city was unjustly enriched by requiring plaintiff to pay for water and sewer charges based on the reading of the interior water meter at his home in July 2012. The trial court applied the doctrine of unjust enrichment after concluding that the city should be equitably estopped from collecting the amount billed to plaintiff in July 2012, which was based on a difference in the reading between his old meter and the new smart meter inside his home. The trial court reasoned that plaintiff would not have purchased the home in 2011 if the city had properly reported the outstanding utility bill.

Initially, the trial court erred insofar as it found that plaintiff could avoid paying for past utility services received under the doctrine of equitable estoppel. "Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1948). "Arguments based on equitable estoppel to avoid payment for public utility services received have been consistently rejected." *Sigal v Detroit*, 140 Mich App 39, 42; 362 NW2d 886 (1985). In *Sigal*, the plaintiff purchased an interest in an apartment building after inspecting past water bills that indicated the building's account was current and revealed quarterly water bills of between $500 and $700. *Id*. at 40. Shortly after the purchase, the plaintiff received a water bill for $3,441.98 and discovered that the meter had not been read in three years. *Id*. This Court held that the plaintiff could not rely on equitable estoppel to avoid liability for payment of water consumed because a "city must charge consumers within each rate classification according to an equal rate" for provided services. *Id*. at 44. Rather, the Court noted, "[u]nder appropriate circumstances, plaintiffs might have a claim against the seller for fraud or have a meritorious claim for rescission of the contract based on a mutual mistake." *Id*. at 45.

In this case, just as in *Sigal*, the Inkster Charter precludes provision of free water and sewer services and prohibits rate discrimination. Accordingly, the trial court erred when it ruled that plaintiff could avoid payment of previously received services under the doctrine of equitable estoppel. However, on the record before us, insufficient evidence demonstrates that plaintiff actually received the utility services for which he was charged. At the bench trial, city treasurer Mark Stuhldreher testified that after the city installed a new smart water meter in plaintiff's home in 2012, the city took a reading of usage calculated by the new meter versus the old meter and determined that "there was a difference between those two numbers." The city then created an estimate based on the difference between the two meters and generated a bill of $6,903.64.

When asked to describe why the old meter produced a lower reading, Stuhldreher explained, "As time goes by, the older meters began to breakdown. They run slow." There is no evidence in the record indicating that plaintiff's old water meter ran at the same slower speed throughout its lifetime, or even during the period for which the city calculated plaintiff's past utility service usage. Further, as the trial court noted below, plaintiff's water bill does not indicate what period of time is covered by the charge. Although a municipal utility may permissibly charge for past utility services provided to its customers, in this case, we believe a remand is necessary for the city to provide sufficient evidence[5] that plaintiff actually received the services for which he was charged. On remand, if the utility can prove that plaintiff actually received unpaid water and sewer services, it may charge for those services using the rates in effect at the time the usage occurred.

In Docket No. 320161, we reverse the trial court's judgment with respect to the combined water and sewer rates, but remand for further proceedings consistent with this opinion on the issue of plaintiff's July 2012 bill. In Docket No. 324564, we vacate the trial court's June 4 and June 16, 2014 postjudgment orders in their entirety. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Henry William Saad
/s/ Michael F. Gadola

---

[5] We conclude that the burden of proving past receipt of utility services by a customer is appropriately placed on the municipal utility in light of the fact that the utility holds all of the evidence concerning its customers' past service usage. In our estimation, placing the burden of proof on a customer to demonstrate non-usage would create an insurmountable evidentiary barrier and would preclude appropriate accountability on the part of the utility.