*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEERHURST CONDOMINIUM OWNERS
ASSOCIATION, INC., and WOODVIEW
CONDOMINIUM ASSOCIATION, Individually
and as Representatives of a Class of Similarly
Situated Persons and Entities,

UNPUBLISHED
January 29, 2019

　　　　Plaintiffs-Appellants,

v

No. 339143
Wayne Circuit Court
LC No. 15-006473-CZ

CITY OF WESTLAND,

　　　　Defendant-Appellee.

Before: MURRAY, C.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

　　　　Plaintiffs brought suit alleging that defendant's water and sewer rates violated several provisions of law including MCL 123.141(1) and Const 1963, art 9, §§ 25-34, popularly known as the Headlee Amendment. Plaintiffs appeal the trial court's order granting defendant summary disposition. For the reasons set forth below, we affirm.[1]

---

[1] Because the trial court considered materials outside the pleadings, we will review the trial court's grant of summary disposition to defendant under MCR 2.116(C)(10). A trial court's decision whether to grant summary disposition is reviewed de novo. *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016).

　　　　In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the

## II. BACKGROUND

Defendant City of Westland (the City) operates and maintains a water and sewer system. By law, the rates charged to users of the system must be based on the water and sewer department's (the department) actual costs of providing those services to its inhabitants. Among the department's expenses is the amount it transfers to the City's general fund to cover its proportional share of the City's administrative costs.[2] Plaintiffs agree that the City may make such transfers to the general fund in order to compensate the City's other departments for the goods and services they render to the water and sewer department. However, plaintiffs maintain that the City has "grossly inflated" the costs of those goods and services by allocating a disproportionate amount of the City's administrative costs to the department. Plaintiffs allege that doing so violates the Headlee Amendment as well as MCL 123.141(3), common law ratemaking rules, and the City's Charter. Accordingly, plaintiffs seek a refund of what they deem to be overcharges paid in the previous six years, in addition to declaratory and injunctive relief.

Plaintiffs' claim rests largely on the testimony of their expert witness, James R. Olson, an analyst for MGT of America Consulting Group. MGT specializes in "indirect cost allocation" and primarily works with municipalities to identify "overhead" costs that can be allocated to specific departments. Olson reviewed the City's cost allocation sheet, the deposition testimony of City officials, and the City's balance sheet and budget. He took issue with the City's allocation methodology, asserting that it is not based on "actual cost data." For example, he pointed out that the City allocates 30% of its annual attorney fees to the department, but could not provide documentary support for that allocation. Similarly, Olson opined that the City improperly allocates 50% of the rent for the City's DPS garage to the water and sewer department and that the allocation should instead be based on the building's depreciation expense.

The City responds that Olson's testimony, while criticizing some individual allocations, failed to address, let alone establish, that the final rate charged was inconsistent with the department's *total* expenses. The City points out that Olson conceded that he did not perform a "full cost allocation study," meaning that, while Olson looked at certain individual categories of the City's cost allocation, he did not perform a complete analysis of the goods, services, and facilities provided by the City's general departments to the water and sewer department. Thus, Olson did not have an opinion as to whether the total amount of administrative costs allocated to

---

moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 488; 892 NW2d 467 (2016) (quotation marks and citations omitted).]

[2] For instance, the City transfers water and sewer funds to the City's general fund to pay for a percentage of the operation of the City's IT Department, which provides services to the department.

the water and sewer department was reasonable. Nor did Olson perform a "rate study," which would have required him to identify all the department's expenses and identify the revenue necessary to operate the utility in a sound financial manner. Thus, Olson did not express an opinion on whether the actual rates were unreasonable in relation to the necessary revenue. In addition, he conceded that a 10 to 15% variation between budgeted costs and actual costs is reasonable.

Plaintiffs also claim that the City's calculation of water and sewer rates is improper because it includes an expense of $500,000 per year for future capital improvements and repairs. Plaintiffs do not dispute that the department's budgeting must include amounts to finance *current* capital improvements, but they assert that it is improper for the City to include sums for future, as yet unspecified capital improvements in its revenue requirements.

In the trial court, the parties filed competing motions for summary disposition. The City filed a response to plaintiffs' motion for summary disposition in which the City first disclosed Mark Beauchamp, president of Utility Financial Solutions, as an expert witness. In an affidavit, Beauchamp echoed Olson's conclusion that a full cost allocation study was necessary to verify the reasonableness of the administrative costs the City allocated to water and sewer department. He further averred that he reviewed and approved a revised cost allocation study performed by Deborah Peck, the City's budget director, which concluded that the department's actual administrative costs were always within 10% of the budgeted administrative costs. Plaintiffs then filed a motion in limine to exclude Beauchamp's and Peck's proposed testimony arguing that the City failed to timely disclose Beauchamp as an expert witness and that Peck's testimony was inadmissible because her revised allocation study was not in the record.

In June 2017, the trial court issued an opinion and order granting the City's motion for summary disposition, denying plaintiffs' motions for summary disposition, and denying plaintiffs' motion in limine. The trial court determined that plaintiffs failed to overcome the presumption that the City's rates were reasonable. The trial court also rejected plaintiffs' argument that the City's rates constituted a tax that was imposed in violation of the Headlee Amendment and MCL 141.91. Further, the trial court ruled that plaintiffs' Headlee Amendment claim was barred by the one-year statute of limitations set forth in MCL 600.308a(3). In denying plaintiffs' motion for in limine, the court stated that plaintiffs could move for an order compelling production of Peck's analysis, which would be a more appropriate remedy than striking the evidence. The court also determined that Beauchamp's analysis was reliable and that his explanation of methods used by the City would assist the trier of fact. The court concluded that both Peck and Beauchamp could serve as rebuttal witnesses to Olson.

III. ANALYSIS

A. REASONABLENESS OF RATES

MCL 123.141, *et seq.*, governs the sale of water outside territorial limits. Because the City purchases its water from the Great Lakes Water Authority,[3] it is a "contractual customer" under MCL 123.141(2). Accordingly, the City's water ratemaking[4] must comply with MCL 123.141(3), which provides that "[t]he retail rate charged to the inhabitants of a city, village, township, or authority which is a contractual customer as provided by subsection (2) shall not exceed the actual cost of providing the service." However,

> MCL 123.141 does not alter the general standard of reasonableness applied by courts when reviewing utility rates. Because of the difficulties inherent in ratemaking and the limitations on judicial review, the phrase "actual cost of providing the service" as used in the statute does not mean exactly equal to the actual costs of providing the service. Accordingly, while a utility fee must be reasonably proportionate to the direct and indirect costs of providing the service for which the fee is charged, mathematic precision is not required. [*Trahey v Inkster*, 311 Mich App 582, 597; 876 NW2d 582 (2015) (citations omitted).]

"Michigan courts have long recognized the principle that municipal utility rates are presumptively reasonable." *Id*. at 594. In general, "rate-making is a legislative function that is better left to the discretion of the governmental body authorized to set rates." *Novi v Detroit*, 433 Mich 414, 427; 446 NW2d 118 (1989). "Courts of law are ill-equipped to deal with the complex, technical processes required to evaluate the various cost factors and various methods of weighing those factors required in rate-making." *Id*. at 430. "The determination of 'reasonableness' is generally considered by courts to be a question of fact." *Id*. at 431. "[T]he presumption of reasonableness may be overcome by a proper showing of evidence." *Trahey*, 311 Mich App at 594. It is a plaintiff's burden "to show that any given rate or ratemaking practice is unreasonable." *Id*. "Absent clear evidence of illegal or improper expenses included in a municipal utility's rates, a court has no authority to disregard the presumption that the rate is reasonable." *Id*. at 595.

---

[3] MCL 123.141(1) provides that "[a] municipal corporation, referred to in this act as a corporation, authorized by law to sell water outside of its territorial limits, may contract for the sale of water with a city, village, township, or authority authorized to provide a water supply for its inhabitants." The City has historically purchased its water from the city of Detroit; the GLWA was formed during the city of Detroit's bankruptcy proceedings.

[4] MCL 123.141 only applies to sale of water and therefore it does not govern the City's sewer ratemaking. However, the City's Charter requires reasonable sewer rates. Specifically, "[t]he City may fix and collect charges for such disposal services, tap-in fees and connection fees, the proceeds of which shall be exclusively used for the purpose of the sewage disposal system." Westland Charter, § 16.10. Further, "The Council shall have the power to fix from time to time such just and reasonable rates and other charges as may be deemed advisable for supplying the inhabitants of the City and others with such public utility services as the City may provide." Westland Charter, § 17.3.

As noted, plaintiffs argue that the City allocated too great a portion of certain administrative costs to the water and sewer department. Viewing the evidence in a light most favorable to plaintiffs, we agree that there is a question of fact regarding those particular allocations. Indeed, the City effectively conceded that there were errors in its cost allocation when it presented proposed testimony regarding a revised cost allocation study.

We disagree with plaintiffs' contention, however, that questions regarding particular administrative costs, by themselves, precludes summary disposition. It is plaintiffs' burden to establish the unreasonableness of the City's rates, and they have failed to present evidence that the City's overall allocation of administrative costs to the water and sewer department is unreasonable. Specifically, Olson testified that he did not prepare a full cost allocation plan in analyzing the administrative expenses allocated to the water and sewer department. He also admitted that other municipal departments could have provided more services to the water and sewer department than reflected in the budget and that a full cost allocation plan could indicate that the cost allocation should be higher than the amount that the City allocated in its budget. Olson further acknowledged that rates are set prospectively, that such prospective budgeting cannot be conducted with mathematical certainty, and that it would be reasonable if the budgeted amount of a cost allocation was off by about 15%.[5]

Most significantly, plaintiffs failed to analyze the reasonableness of the City's overall rates by conducting a rate study. Olson agreed that if the rates cover the actual revenue requirements of the water and sewer department, then the rates are valid and customers will have suffered no damages. Yet Olson was not asked to review the overall expenditures of the water and sewer department, and he held no opinion overall concerning whether the total expenditures of the water and sewer department were reasonable. Thus, plaintiffs made no attempt to analyze the City's rates in lights of the department's revenue requirements. Nor have plaintiffs explained how incorrect or improper administrative cost allocations in and of themselves renders the City's water and sewer rates unreasonable.

In sum, plaintiffs argue that their claims may proceed solely on the basis of certain selected individual expense components that they have chosen to address without a broader evaluation of whether such allegedly improperly estimated expenses in the City's original budget (1) resulted in an unreasonable variance from the actual overall costs and (2) affected the reasonableness of the rates. Given the lack of a more universal analysis, plaintiffs have failed to provide an evidentiary basis from which to conclude that the amount of the department's administrative costs renders the City's water and sewer rates unreasonable.

Plaintiffs also fail to cite any authority to support what would be a form of active court oversight that would amount to an exacting level of judicial auditing of only those individual expenses of a municipal utility that a plaintiff chooses to challenge without respect to whether

---

[5] This testimony is consistent with established legal principles, including that "ratemaking is a prospective operation," *Trahey*, 311 Mich App at 597, and that "mathematic precision is not required" when a court assesses whether a utility fee is "reasonably proportionate to the direct and indirect costs of providing the services for which the fee is charged," *id*.

the overall cost allocation is reasonably accurate and without respect to whether the actual water and sewer rates are reasonable. Plaintiffs' argument is at odds with the limited role of the judiciary in reviewing municipal utility rates. See *Novi*, 433 Mich at 425-426, 428, 430. Nor have plaintiffs cited any authority for their implicit contention that they are entitled to the correction of every expense allocated to the water and sewer department that was allegedly overestimated.

Plaintiffs also argue that the City's rates are unreasonable because the City uses a portion of its revenue to create a reserve fund for future unspecified infrastructure improvements to its water and sewer systems. Plaintiffs fail to provide any legal authority to establish that this is an improper ratemaking procedure. To the contrary, rate-based public utilities commonly maintain a capital reserve to provide fiscal stability. *Jackson Co v City of Jackson*, 302 Mich App 90, 111; 836 NW2d 903 (2013). According to the affidavit of Steven Smith, the City's finance director, the City's water and sewer systems are comprised of nearly 674 miles of infrastructure and have a replacement cost of approximately $674 million (i.e., it costs approximately $1 million to rebuild each mile of infrastructure). The City has existed for 50 years, its infrastructure has an expected life of 50 to 70 years, and it experiences an average of 160 water main breaks a year. Given this unrebutted evidence, plaintiffs do not overcome the presumption that a $500,000 annual addition to the City's cash reserves to fund future improvements to the water and sewer system is a reasonable ratemaking practice.

In affirming the trial court, we are not relying on the proposed testimony of Beauchamp or Peck regarding the City's revised allocation study. Even if the trial court properly considered those affidavits, the evidence must be viewed in a light most favorable to plaintiff, and there is clearly a question of fact regarding certain aspects of the City's administrative cost allocation. But Olson's own testimony establishes the necessity of an overarching analysis of the water and sewer department's revenue requirements. In the absence of a complete study of the rate structure and all of its components, it is speculative to suggest that some improper expenses have caused the rates to become excessive or unreasonable. Accordingly, plaintiffs have failed to demonstrate a genuine issue of material fact regarding whether the City's rates were unreasonable. And because we do not rely on Beauchamp's or Peck's proposed testimony, we need not address whether the trial court erred in denying plaintiffs' motion in limine. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues.").

## B. THE HEADLEE AMENDMENT

The pertinent provision of the Headlee Amendment, Const 1963, art 9, § 31, states:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.

The levying of a new tax without voter approval violates this section of the Headlee Amendment. *Jackson Co*, 302 Mich App at 99. However, a charge that constitutes a user fee is not subject to

the Headlee Amendment. *Id*. The plaintiff bears the burden of establishing the unconstitutionality of the charge at issue. *Id*. at 98. A court decides, as a question of law, whether a charge is a permissible fee or an illegal tax. *Westlake Transp, Inc v Public Serv Comm*, 255 Mich App 589, 611; 662 NW2d 784 (2003).

"There is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment." *Bolt v Lansing*, 459 Mich 152, 160; 587 NW2d 264 (1998). In general, "a fee is exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit. A tax, on the other hand, is designed to raise revenue." *Id*. at 161 (quotation marks and citations omitted). In *Bolt*, our Supreme Court identified three key criteria to use in distinguishing between a user fee and a tax: (1) a user fee serves a regulatory purpose rather than a revenue-raising purpose; (2) a user fee is proportionate to the necessary costs of the service; and (3) a user fee is voluntary in that property owners are able to refuse or limit their use of the service. *Id*. at 161-162. "These criteria are not to be considered in isolation, but rather in their totality, such that a weakness in one area would not necessarily mandate a finding that the charge is not a fee." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 665; 697 NW2d 180 (2005) (brackets, quotation marks, and citations omitted).

Water and sewer rates are generally considered user fees rather than taxes because they represent a fee paid in exchange for a service. See *Bolt*, 459 Mich at 162.

> The water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity, just as similar rates are payable to gas companies, or to private water works, for their supply of gas or water. [*Bolt*, 459 Mich at 162, quoting *Ripperger v Grand Rapids*, 338 Mich 682, 686; 62 NW2d 585 (1954).]

Water and sewer rates are not always considered user fees, however, because they must be proportionate to the cost of the service. See *Bolt*, 338 Mich at 162 n 12. That said, plaintiffs have presented no evidence that the rates themselves are unreasonable given the deficiencies in their proofs discussed above, particularly Olson's concession that he had not performed a rate study and that he held no opinion concerning the reasonableness of the rates. Considering that plaintiffs fail to overcome the presumption that the City's rates are reasonable, we find no basis from which to conclude that the rates are not proportionate to the cost of service. Instead, the rates constitute a valid user fee because users pay their proportionate share of the expenses associated with the operation and maintenance of the water and sewer systems. See Westland Ordinances, § 102-61.[6] The trial court aptly noted: "Those who use water and sewer services

---

[6] Westland Ordinances, § 102-61 provides, in relevant part:

> The amount of the rates and charges shall be reviewed annually and revised when necessary to ensure system expenses are met and that all users pay their proportionate share of operation, maintenance and equipment replacement expenses.

derive a benefit from paying the rates imposed. Moreover, the rates correlate directly with the amount and frequency of use by each particular user."

Consideration of the other *Bolt* criteria does not alter the conclusion that the City's water and sewer rates constitute a user fee rather than a tax. The first *Bolt* factor indicates that the rates comprise a valid user fee because the rates serve a regulatory purpose of providing water and sewer services to the City's residents. Although the rates generate funds to pay for the operation and maintenance of the water and sewer system, this by itself does not establish that the rates serve a primary revenue-generating purpose. "While a fee must serve a primary regulatory purpose, it can also raise money as long as it is in support of the underlying regulatory purpose." *Graham v Kochville Twp*, 236 Mich App 141, 151; 599 NW2d 793 (1999).

Plaintiffs, relying on *Bolt*, 459 Mich 152, contend that it is impermissible for the City to incorporate costs in its water and sewer rates which will be used to fund future capital improvements. In *Bolt*, the City of Lansing imposed a "storm water service charge" on property owners to fund the separation of the remaining portion of its combined sanitary and storm systems. *Id*. at 155. The Supreme Court determined that the storm water service charge failed to satisfy the first and second criteria because the charge did not correspond to the benefits conferred. *Id*. at 165. 75% of the property owners in Lansing were already served by a separate storm and sanitary sewer system, but those property owners would be charged the same amount as the 25% who would most benefit from the construction. *Id*. Further, the cost of this project was $176 million over 30 years. *Id*. at 155. The Court noted that the charge was "an investment in infrastructure that will substantially outlast the current 'mortgage' that the storm water charge requires property owners to amortize. At the end of thirty years, property owners will have fully paid for a tangible asset that will serve the city for many years thereafter." *Id*. at 164 (citation omitted).

*Bolt* is primarily distinguishable because it involved a rate increase to fund a completely new alteration to the existing sewer system that benefitted only 25% of the property owners. Here, the City's reserve fund will be used for future capital projects that will benefits all users of the water and sewer services. Those users contribute to wear and tear of the water and sewer system and, by including the cost of future capital projects into its rates, the City ensures that the users will pay a fee proportionate to the necessary costs of service. And in order for the sewer system to serve its regulatory purpose, it must be maintained and periodically replaced and updated. For those reasons, we conclude that the first two *Bolt* criteria establish that the City's water and sewer rates constitute a user fee rather than a tax.

As for the third *Bolt* factor, plaintiffs contend that the City's water and sewer services are not voluntary under statute and the City's ordinances. Even assuming that the water or sewer charges were deemed effectively compulsory in this case, "the lack of volition does not render a charge a tax, particularly where the other criteria indicate the challenged charge is a user fee and not a tax." *Wheeler*, 265 Mich App at 666. We are unconvinced, in the absence of showing that the water and sewer rates are unreasonable, that those rates should be considered a tax as opposed to a user fee. Considering the *Bolt* criteria in totality, we conclude that plaintiffs have not established that the City has imposed an unconstitutional tax.

Accordingly, plaintiffs have not demonstrated a genuine issue of material fact in support of their claims alleging violations of the Headlee Amendment and MCL 141.91.[7] Therefore, the trial court properly granted summary disposition to the City pursuant to MCR 2.116(C)(10). Given our ruling, we decline to address whether plaintiffs' claims are barred by the applicable statute of limitations.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[7] MCL 141.91 provides:

Except as otherwise provided by law and notwithstanding any provision of its charter, a city or village shall not impose, levy or collect a tax, other than an ad valorem property tax, on any subject of taxation, unless the tax was being imposed by the city or village on January 1, 1964.