Kelly, J.
 

 Appellants Attorney General (ag), Midland Cogeneration Venture Limited Partnership (mcv), Michigan Public Power Agency (mppa), Michigan South Central Power Agency (mscpa), and the Association of Businesses Advocating Tariff Equity (abate) claim appeals from orders entered on November 14, 1996, and April 10, 1997, by the Michigan Public Service Commission (PSC) approving a proposed settlement between the PSC staff and Consumers Power Company (Consumers) and granting in part and denying in part rehearing. We affirm.
 

 
 *85
 
 i
 

 On October 10, 1994, Consumers filed an application with the psc seeking an increase in its base electric rates.
 
 [1]
 
 In response to motions filed by the AG and abate, a hearing referee struck testimony offered by the PSC staff concerning Consumers’ proposed addition to its system of 260 megawatts (mw) of capacity currently under contract with the MCV. The referee concluded that the issue should be addressed in another proceeding. The psc staff and Consumers sought leave to appeal the referee’s decision. The psc upheld the decision, noting that an order in another case established that all additional capacity, including that under contract with the MCV, must be subjected to competitive bidding before its costs could be included in Consumers’ rates. A proposal for decision (pfd) was entered by the referee on August 8, 1995.
 

 On January 19, 1995, Consumers filed an application with the psc requesting revision of its depreciation rates and practices.
 
 [2]
 
 On July 27, 1995, the referee issued a pfd.
 

 On January 31, 1995, Consumers filed an application with the psc requesting approval of a competitive tariff, Rate SCS, which would allow eligible customers with power alternatives to negotiate discounted rates for electric energy.
 
 [3]
 

 These three cases were consolidated for settlement purposes. Regarding the request for the rate increase, the settlement provided for an increase of $49.9 million in electric rates, a new rate design to reallocate
 
 *86
 
 the costs of services, a moratorium on base rate increases until January 1, 2001, a rate adjustment mechanism based on the Consumers Price Index (CPI) less one percent, and cost recovery of capacity charges for an additional 325 MW of the MCV capacity.
 

 Regarding the request for the revision of depreciation rates, the settlement provided for the transfer of $93 million in depreciation reserve balances from transmission plant accounts to nuclear production plant accounts, the transfer of $18 million a year in depreciation expenses for five years from steam production accounts to nuclear production accounts, and a modification of depreciation rates.
 

 Regarding the request for approval of a competitive tariff, the settlement provided limited direct access service, up to 650 MW, available to customers having loads in excess of 3,000 kilowatts (kw), and allowing Consumers to negotiate and enter into contracts with customers eligible for direct access service.
 

 On November 28, 1995, the PSC issued an order granting Consumers’ motions to amend its applications in these cases to reflect the proposed settlement. The PSC also granted the motion by Consumers and the PSC staff to consolidate the cases. Also, Consumers’ motion for rehearing of the May 9, 1995, order excluding testimony regarding Consumers’ request to obtain rate-making treatment of the remaining 325 MW of the MCV capacity was granted.
 

 On November 14, 1996, the PSC issued a final opinion and order in the consolidated cases. The PSC found that the requirements for approval of a contested settlement had been met. The PSC rejected abate’s argument that the parties to the settlement
 
 *87
 
 (Consumers and the psc staff) did not represent the public interest.
 

 Regarding the request for the rate increase, the PSC confirmed its approval of a rate increase in the amount of $46,459,000, and rejected the rate adjustment of the CPI less one percent proposed by the settlement. Also, the psc approved recovery of capacity charges for 325 MW of additional capacity from the mcv for power supply cost recovery (pscr) factors pursuant to 1982 PA 304, MCL 460.6j; MSA 22.13(6j). The PSC found that the record demonstrated that the capacity was needed and that the pricing was appropriate. The PSC rejected the ag’s argument that the settlement violated federal law, which limits the capacity charges paid to a qualifying facility to the purchasing utility’s avoided cost of capacity. The PSC also rejected the AG’s argument that the “law of the case” doctrine precluded recovery of the excess 325 mw because in a previous case the PSC set excess megawatts at a capacity cost of zero. That decision was not based on Consumers’ need for new capacity.
 
 [4]
 

 Regarding the request for depreciation rate revisions, the PSC approved the transfer of $18 million a year in depreciation expense from steam production accounts to nuclear production accounts. The psc disapproved of the transfer of $93.6 million in depreciation reserves from transmission plant accounts to nuclear production accounts.
 

 Regarding the request for a competitive tariff, the PSC authorized Consumers to provide Direct Access
 
 *88
 
 Service (Rate DA) and individual contract service. Current and future Consumers’ customers with a maximum demand of at least 3,000 kW could purchase generation services directly from an eligible third-party supplier.
 

 Consumers filed a notice accepting the psc’s final order. Various parties, including Consumers, filed petitions for rehearing. On April 10, 1997, the PSC issued an order granting in part and denying in part the petitions for rehearing.
 

 The standard of review for PSC orders is narrow and well-defined. Pursuant to MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable.
 
 Michigan Consolidated Gas Co v Public Service
 
 Comm, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8). Also, Const 1963, art 6, § 28 applies and provides that a final agency order must be authorized by law and be supported by competent, material, and substantial evidence on the whole record.
 
 Attorney General v Public Service Comm,
 
 165 Mich App 230, 235; 418 NW2d 660 (1987). This Court gives due deference to the psc’s administrative expertise and is not to substitute its judgment for that of the PSC.
 
 Building Owners & Managers Ass’n of Metropolitan Detroit v Public Service Comm,
 
 131 Mich App 504, 517; 346 NW2d 581 (1984).
 

 n
 

 In Docket No. 203101, the AG raises three issues on appeal. First, the AG claims the PSC erred in granting
 
 *89
 
 Consumers’ motion for rehearing by reversing the order in which it ruled that Consumers was barred by prior case decisions from recovering capacity costs for the 325 mw of generating plant capacity.
 

 Our Supreme Court has stated that the psc has the authority to grant rehearing; further, it cannot be assumed that it will do so “capriciously, without good cause shown.”
 
 City of Lansing v Public Service Comm,
 
 330 Mich 608, 613; 48 NW2d 133 (1951). The PSC’s decision to grant rehearing of the May 9, 1995, order is consistent with prior psc rulings or decisions of this Court. In Case No. U-8871, the PSC determined that Consumers needed only 1,160 MW of the MCV capacity. In Case No. U-10127, the psc revised that figure to 1,199 mw, and authorized Consumers to recover capacity charges for up to 915 mw. The psc specifically stated that Consumers was
 
 not
 
 precluded from seeking to recover for capacity above the 915 MW figure in the future. This Court affirmed the PSC’s order in Case No. U-10127.
 
 [5]
 
 The AG’s assertion that the PSC’s orders in Case Nos. U-8871 and U-10127 resolved with finality the issue of Consumers’ need for capacity above 915 MW of the mcv capacity is not supported by the language of the order in Case No. U-10127. This Court accords substantial deference to the PSC’s interpretation of its orders.
 
 ABATE v Public Service Comm,
 
 219 Mich App 653, 661-662; 557 NW2d 918 (1996).
 

 In the May 9, 1995, order entered in Case No. U-10685, the PSC held that consideration of cost recovery for the remaining 325 MW of the mcv capacity should be done only in the context of a competitive
 
 *90
 
 solicitation of capacity. The proposed settlement agreement constituted a change in circumstances. The proposed settlement, negotiated after entry of the May 9, 1995, order, provided for Consumers’ recovery costs for the additional 325 MW of the MCV capacity. Given the advent of the proposed settlement, and the capacity shortfall, the PSC concluded that Consumers had shown that rehearing was warranted. As noted above, this Court gives deference to the PSC’s inteipretation of its rules.
 
 ABATE, supra
 
 at 661. Because the PSC’s order in Case No. U-10127 recognized that Consumers retained the right to seek rate-making treatment for the remaining 325 MW of the mcv capacity, the granting of the motion for rehearing did not alter the PSC’s prior decision. This Court’s affirmance of the PSC’s order did not address this issue. Therefore, the law of the case doctrine does not apply.
 
 Kalamazoo v Dep’t of Corrections (After Remand),
 
 229 Mich App 132, 135; 580 NW2d 475 (1998).
 

 Next, the AG claims that the psc erred in allowing Consumers to amend its applications and consolidate the cases for consideration of the settlement offer after the evidentiary records had been closed. The PSC has wide authority over the extensive regulatory scheme that it is empowered to administer, and this Court gives great deference to the PSC in taking reasonable steps in doing so.
 
 Champion’s Auto Ferry, Inc v Public Service Comm,
 
 231 Mich App 699, 708; 588 NW2d 153 (1998). We conclude that the PSC’s actions in granting the motions to amend and consolidate promoted economic and judicial efficiency.
 

 Next, the AG claims, assuming arguendo that the motions for rehearing, consolidation, and to amend were appropriately granted, that the PSC erred in
 
 *91
 
 approving Consumers’ recovery of the 3.62 cents a kw hour capacity charge for the 325 MW capacity purchase from the MOV because it violated the Public Utility Regulatory Policies Act (purpa), 16 USC 2601
 
 et seq.,
 
 or because the price was not reasonable. We disagree and find the charge to be lawful and reasonable.
 

 As noted above, the decision in Case No. U-10127 does not preclude Consumers from seeking rate-making treatment for the 325 MW capacity in the future. Further, the decision does not conclude that the avoided cost recovery for the remaining 325 MW would be calculated at zero. The PSC was presented with conflicting testimony regarding the appropriateness of comparing the price established via the settlement agreement with alternatives such as short-term purchase agreements. The PSC relied on and accepted the testimony presented by witnesses for Consumers. The PSC was entitled to do so.
 
 Great Lakes Steel v Public Service Comm,
 
 130 Mich App 470, 481-482; 344 NW2d 321 (1983).
 

 We conclude that the rate is within the zone of reasonableness within which the PSC’s judgment operates without judicial interference.
 
 Michigan Bell Telephone Co v Public Service Comm,
 
 332 Mich 7, 26-27; 50 NW2d 826 (1952). The AG has not established by clear and satisfactory evidence that the PSC’s order approving the settlement is unreasonable and unlawful. MCL 462.26(8); MSA 22.45(8).
 

 m
 

 In Docket No. 203102, the MCV argues that the PSC, in violation of the PURPA, erred in failing to outline in its order approving the contested settlement that all of the mcv’s avoided cost-based energy charges for
 
 *92
 
 electric energy delivered to Consumers be fully recovered from Consumers’ ratepayers. We decline to address this issue because it is not ripe for appellate review. The time to challenge a condition imposed by the PSC is in an appeal from the order imposing the condition.
 
 CMS Energy Corp v Attorney General,
 
 190 Mich App 220, 227-228; 475 NW2d 451 (1991). The PSC did not state or imply that less than one hundred percent of those costs could be recovered from customers. The PSC did not decide the issue. Therefore, we decline to address the mcv’s claim on appeal.
 

 iv
 

 In Docket No. 203131, the mppa and the mscpa argue that the psc erred in approving the individual contract service (ICS) tariff because it allows Consumers to set its own rates without oversight and in a discriminatory fashion. Assuming, arguendo, that the mppa and the MSCPA have standing to challenge the order, we conclude that the tariff is lawful and reasonable.
 

 The ICS tariff established a range of rates in which Consumers and a qualified customer must negotiate. The assertion by the mppa and the mscpa that the PSC has no part in establishing the rate charged by Consumers under the ICS contract is without merit. This Court in the past has affirmed orders establishing tariffs that provided a range of acceptable rates. See generally
 
 Midland Cogeneration Venture Ltd Partnership v Public Service Comm,
 
 199 Mich App 286; 501 NW2d 573 (1993). The mppa and the mscpa have not shown by clear and satisfactory evidence that the psc’s approval of the ICS tariff was unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8).
 

 
 *93
 
 v
 

 In Docket No. 203159, abate claims that the psc erred in granting Consumers’ motions to amend, for consolidation, and for rehearing, abate also claims that the psc erred in denying its motion for partial summary disposition based on the law of the case doctrine. We disagree and rely on our reasoning set forth above in our discussion of the issues on appeal raised by the AG in Docket No. 203101.
 

 Again in Docket No. 203159, ABATE claims that the PSC erred in finding that the settlement agreement met the criteria for approval as required in 1992 AACS, R 460.17333 (Rule 333).
 
 [6]
 
 We disagree.
 

 Although only two parties, Consumers and the psc staff, were signatories to the proposed settlement, the psc found that the psc staff adequately represented the public interest. Participation of fewer than all interested parties in the negotiation does not mandate a conclusion that the signatories to the settlement did not represent the public interest. Rule 333(5)(b).
 
 *94
 
 Also, all parties to the consolidated proceedings were afforded the opportunity to present testimony and exhibits to the psc, thus satisfying Rule 333(5)(a).
 

 Abate’s primary argument, that the psc’s approval of the agreed-upon price for the additional mcv capacity was not supported by substantial evidence, is without merit. The PSC evaluated the contradictory evidence concerning pricing and rejected testimony advocating a market analysis and comparison to other pricing alternatives. Abate offers no authority for its proposition that the PSC had to evaluate the agreed-upon price in light of an analysis of current market prices for capacity. The PSC used its administrative expertise to evaluate, modify, and approve the proposed settlement agreement. As such, this Court will give great deference to the methods employed by the PSC to administer that which falls within its regulatory umbrella, and not substitute its judgment for that of the PSC.
 
 Building Owners & Managers Ass’n of Metropolitan Detroit, supra
 
 at 517. Thus, Rule 333(5)(c) was satisfied. The settlement agreement was lawful and reasonable.
 

 Affirmed.
 

 [1]
 

 The application was assigned Case No. U-10685.
 

 [2]
 

 The application was assigned Case No. U-10754.
 

 [3]
 

 The application was assigned Case No. U-10787.
 

 [4]
 

 That case,
 
 Consumers Power Co v Public Service Comm,
 
 189 Mich App 151; 472 NW2d 77 (1991), held that Consumers was limited to recovery of 915 mw of the mcv capacity. The case did not preclude Consumers from seeking recovery for capacity above 915 mw in the future.
 

 [5]
 

 ABATE v Public Service Comm,
 
 216 Mich App 8; 548 NW2d 649 (1996).
 

 [6]
 

 Rule 333 states in relevant part:
 

 (5) The commission may approve a settlement agreement if all of the following are met:
 

 (a) Any party that has not agreed to the settlement has signed a statement of nonobjection or has failed to object within the 14 days provided in subrule (3) of this rule, or such other time established by the presiding officer, or the objecting party or parties under sub-rule (3) have been given a reasonable opportunity to present evidence and argument in opposition to the settlement agreement.
 

 (b) The commission finds that the public interest is adequately represented by the parties who entered into the settlement agreement.
 

 (c) The commission finds that the settlement agreement is in the public interest, represents a fair and reasonable resolution of the proceeding, and, if the settlement is contested, is supported by substantial evidence on the record as a whole.