# STATE OF MICHIGAN

# COURT OF APPEALS

---

WESTPHALIA TELEPHONE COMPANY and
GREAT LAKES COMNET, INC.,

Petitioners-Appellees,

v

AT&T CORPORATION,

Respondent-Appellant,

and

MICHIGAN PUBLIC SERVICE COMMISSION,

Appellee.

UNPUBLISHED
September 6, 2016

No. 326100
MPSC
LC No. 00-017619

---

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Respondent AT&T Corporation (AT&T) claims an appeal from an order entered by the Michigan Public Service Commission (PSC) holding that AT&T wrongfully refused to pay petitioners Westphalia Telephone Company (WTC) and Great Lakes Comnet, Inc. (GLC), for switched access services, and ordering AT&T to pay $4.3 million to WTC and GLC. We vacate the PSC's decision and remand for further proceedings. We also lift the stay imposed pending resolution of this appeal.

## BACKGROUND

This case concerns a dispute between telephone carriers regarding payment for switching services.

A single telephone call often requires multiple service providers to complete. If more than one provider is involved in the completion of a call, an arrangement must exist to allow the providers to obtain compensation for their services. The Federal Communications Commission (FCC) governs interstate services, 47 USC 152(b); 47 CFR 61.26, while the PSC governs services that occur entirely within Michigan. MCL 484.2310.

-1-

Several types of carriers exist to provide telecommunications services. A long distance telephone company is known as an interexchange carrier (IXC). A local telephone company is known as a local exchange carrier (LEC); an LEC is either an incumbent LEC (ILEC)[1] or a competitive LEC (CLEC).[2] As a general rule, an IXC must use the services of an LEC to complete a call that is originated in one local exchange area and completed in another local exchange area in either the same or a different state. In some circumstances, a call is taken by one LEC, switched to an IXC, and then switched to another LEC to be completed. In some instances, a competitive access provider (CAP), a company that operates a private network on a wholesale basis, provides intermediate transport by linking the IXC to the LECs at the starting and finishing points of a call. An IXC does not choose the LECs that are involved in the transmission of a call. Those choices are made by the maker and receiver of the call.

AT&T is registered in Michigan as an IXC, a CAP, and a CLEC, and it is licensed to provide basic local exchange service. WTC is registered in Michigan as a rural ILEC and is licensed to provide basic local exchange service. GLC is registered in Michigan as a CAP, but is not licensed to provide basic local exchange service. WTC and GLC provide links between AT&T and the local telephone companies to which AT&T sends calls and from which AT&T sends calls.

Switched access service (SAS) charges are charges paid by IXCs to LECs for the use of the LECs' network facilities to originate and terminate long distance calls. These charges are a form of intercarrier compensation, and they may include charges made for transporting calls over wires and switching calls (routing them in a particular direction). Interstate SAS charges are regulated by the FCC. 47 USC 152(b). In 2001, the FCC issued an order in which it limited the amount that CLECs could charge IXCs for interstate SAS to an amount tied to rates charged by competing ILECs.[3] In 2004, the FCC extended the cost reform to intermediate CLECs.[4] These cost reforms are codified in 47 CFR 61.26, which provides, in pertinent part:

> (a) For purposes of this section, the following definitions shall apply:

> (1) *CLEC* shall mean a local exchange carrier that provides some or all of the interstate exchange access services used to send traffic to or from an end user and does not fall within the definition of "incumbent local exchange carrier" in 47 U.S.C. 251(h).

---

[1] An ILEC is the local exchange carrier that provided service to a specified area as of February 8, 1996. 47 USC 251(h)(1).

[2] A CLEC is a local exchange carrier that does not meet the definition of an ILEC. 47 CFR 61.26(a)(1).

[3] *In the Matter of Access Charge Reform: Reform of Access Charges Imposed by Competitive Local Exchange Carriers*, 16 FCC Rcd 9923 (2001).

[4] *In the Matter of Access Charge Reform: Reform of Access Charges Imposed by Competitive Local Exchange Carriers*, 19 FCC Rcd 9108 (2004).

(2) *Competing ILEC* shall mean the incumbent local exchange carrier, as defined in 47 U.S.C. 251(h), that would provide interstate exchange access services, in whole or in part, to the extent those services were not provided by the CLEC.

\* \* \*

(6) *Rural CLEC* shall mean a CLEC that does not serve (*i.e.*, terminate traffic to or originate traffic from) any end users located within either:

(*i*) Any incorporated place of 50,000 inhabitants or more, based on the most recently available population statistics of the Census Bureau or

(*ii*) An urbanized area, as defined by the Census Bureau.

\* \* \*

(b) Except as provided in paragraphs (c), (e), and (g) of this section, a CLEC shall not file a tariff for its interstate switched exchange access services that prices those services above the higher of:

(1) The rate charged for such services by the competing ILEC or

(2) The lower of:

(*i*) The benchmark rate described in paragraph (c) of this section or

(*ii*) In the case of interstate switched access service, the lowest rate that the CLEC has tariffed for its interstate exchange access services, within the six months preceding June 20, 2001.

\* \* \*

(e) Except as provided in paragraph (g) of this section, and notwithstanding paragraphs (b) through (d) of this section, a rural CLEC competing with a non-rural ILEC shall not file a tariff for its interstate exchange access services that prices those services above the rate prescribed in the NECA access tariff, assuming the highest rate band for local switching. In addition to the NECA rate, the rural CLEC may assess a presubscribed interexchange carrier charge if, and only to the extent that, the competing ILEC assesses this charge. Beginning July 1, 2013, all CLEC reciprocal compensation rates for intrastate switched exchange access service subject to this subpart shall be no higher than that NECA rate.

In 2009, Michigan passed the Michigan Telecommunications Act (MTA or Act 182). 182 PA 2009. Act 182 requires providers of access services to set intrastate SAS rates no higher than the rate allowed by the FCC for corresponding interstate service. This requirement is codified in MCL 484.2310(2), which provides:

A provider of toll access services shall set the rates for intrastate switched toll access serves at rates that do not exceed the rates allowed for the same interstate services by the federal government and shall use the access rate elements for intrastate switched toll access services that are in effect for that provider and are allowed for the same interstate services by the federal government. Eligible providers shall comply with this subsection as of the date established for the commencement of the operation of the restructuring mechanism under subsection (9). Providers other than eligible providers shall not charge intrastate toll access service rates in excess of those rates in effect as of July 1, 2009 and shall reduce the differential, if any, between intrastate and interstate switched toll access service rates in effect as of July 1, 2009 in no more than 5 steps of at least 20% each of the differential on the following dates: January 1, 2011; January 1, 2012; January 1, 2013; January 1, 2014; and January 1, 2015. Providers may agree to a rate that is less than the rate allowed by the federal government.

Except in limited circumstances set out in MCL 484.2310, the PSC does not set the rates charged for toll access services. MCL 484.2310(1).

PROCEEDINGS IN THE INSTANT CASE

On May 12, 2014, WTC and GLC, hereinafter referred to as complainants, filed an application and complaint with the PSC alleging that AT&T had refused to pay SAS charges "for intrastate calls routed by a third party carrier to GLC's tandem switch[.]" Complainants alleged that the call traffic involved in the dispute consisted of long distance traffic to and from customers served by Local Exchange Carriers of Michigan (LECMI)[5] and 8YY toll free calls from wireless users delivered to LECMI's end office switch and then routed over GLC's network. The application alleged that AT&T had routed call traffic "to and from LECMI via GLC's tandem switch[]" for a period exceeding 10 years, and from 2002 until July 2012, had paid complainants' invoices for the service without objection. Thereafter, AT&T asserted that complainants were engaging in unreasonable practices designed to inflate the cost of their services, and it began withholding a portion of its payments to complainants. Complainants sent AT&T a formal demand letter demanding payment in full of past due amounts, but AT&T continued to withhold payment. Complainants alleged that AT&T declined to pay, but that they continued to handle AT&T's call traffic. The complaint alleged breach of contract (Count I), breach of implied-in-fact contract (Count II and pleaded in the alternative to Count I), and unjust enrichment/breach of implied-in-law contract/quantum meruit (Count III and pleaded in the alternative to Counts I and II).

---

[5] The complaint indicates that LECMI is an independent CLEC that "provides its customers with local and long distance services, and transport services." LECMI carried some call traffic involved in this case, and it was found to have billed complainants for services it did not render.

-4-

AT&T filed an answer, and it also filed a counterclaim seeking to recover amounts it alleged that complainants had overcharged it for switched access services in violation of Michigan law.

The Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) finding that GLC was a CLEC within the meaning of 47 CFR 61.26(a)(1), but was not a rural CLEC within the meaning of 47 CFR 61.26(a)(6). The ALJ determined that because GLC was a CLEC, its intrastate SAS rates were required to be no higher than corresponding interstate SAS rates charged by the competing ILEC. The ALJ concluded that because GLC's intrastate SAS rates were higher than allowed, complainants improperly billed AT&T for intrastate SAS services at a rate that did not comply with MCL 484.2310.

In addition, the ALJ found that complainants' practice of overbilling did not comply with complainants' tariff or with state and federal law. That practice entitled AT&T to a refund of the excess charges. The ALJ recommended that complainants' complaint be dismissed and that complainants be required to refund to AT&T intrastate switched access payments that exceeded tariff rates.

The PSC entered an order reversing the ALJ's recommendation. The essence of the PSC's holding was that GLC was not a CLEC for purposes of 47 CFR 61.26. The PSC further determined that because GLC's interstate SAS rate complied with federal law, the rate also complied with MCL 484.2310(2). The PSC concluded that it was not required to determine if the rural exemption in 47 CFR 61.26(e) applied to GLC because GLC was not a CLEC. The PSC concluded that AT&T owed WTC and GLC the amounts withheld from billings submitted by WTC.

The PSC also declined to order complainant to refund to AT&T charges collected for services the evidence showed that LECMI did not render to AT&T. The PSC reasoned that the collective billing arrangement was standard industry practice and that AT&T was required to pursue its rights against LECMI. The PSC observed that AT&T could have made LECMI a party to the case and asserted its claim in that manner.

AT&T filed a claim of appeal in this Court, and moved for a stay of the PSC's order pending appeal. This Court entered an order granting a stay.

On March 18, 2015, the Federal Communications Commission (FCC) issued a memorandum opinion and order in an action filed by AT&T against WTC and GLC seeking a refund of interstate SAS charges billed pursuant to an unlawful tariff. *In re ATT Servs & AT&T Corp v Great Lakes Comnet, Inc & Westphalia Tel Co*, FCC 02-05 (rel. March 18, 2015). The FCC agreed with AT&T's allegations, finding that "GLC violated the Commission's Rules governing competitive local exchange carrier tariffs for interstate access services, and that the tariff therefore is unlawful" (*Id*. at 1). Specifically, the FCC found that GLC was a CLEC for

purposes of 47 CFR 61.26, even though GLC does not serve end users directly (*Id*. at 6-7).[6] In addition, the FCC rejected GLC's contention that it was a rural CLEC and concluded that GLC was not entitled to the exemption in 47 CFR 61.26(e) (*Id*. at 9-10).[7]

## STANDARD OF REVIEW

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

A reviewing court gives due deference to the PSC's administrative expertise, and is not to substitute its judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and we will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid to determining the legislative intent, and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on us. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103-109; 754 NW2d 259 (2008). Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

---

[6] The FCC stated that it disagreed with the PSC's contrary conclusion. *In re ATT Servs & AT&T Corp v Great Lakes Comnet, Inc & Westphalia Tel Co*, FCC 02-05 (rel. March 18, 2015), at 6 n 64.

[7] WTC and GLC filed a petition in federal court seeking review of the FCC's decision. On May 24, 2016, the Court of Appeals for the DC Circuit issued a decision denying the petition in part and remanding the matter to the FCC for further consideration. *Great Lakes Comnet, Inc v FCC*, 823 F3d 998 (CA DC, 2016). The DC Circuit upheld the FCC's finding that GLC was a CLEC and thus was subject to benchmark regulation under 47 CFR 61.26. *Great Lakes Comnet*, 823 F3d at 1002-1004. The DC Circuit remanded the case to the FCC for further consideration of GLC's argument that it was a rural CLEC and thus was exempt from the FCC's benchmark regulations. *Id*. at 1004. The DC Circuit denied the petition in all other respects. *Id*. at 1005.

ANALYSIS

On appeal, AT&T argues that because federal courts of appeal have exclusive jurisdiction to determine the validity of all final FCC orders, 28 USC 2342(1), this Court cannot determine that the FCC's decision is invalid. We agree, vacate the PSC's order, and remand this matter to the PSC for reconsideration in light of the decisions of the FCC and the DC Circuit.

The PSC's decision that AT&T owed complainants the amounts AT&T withheld from billings submitted by WTC was based on the PSC's conclusion that GLC was not a CLEC for purposes of 47 CFR 61.26. The PSC noted that as a general rule it does not decide questions of federal law, unless those questions are delegated to the state, MCL 484.2201, but acknowledged that MCL 484.2310(2) required it to determine "the allowable interstate access rate applicable to GLC, in order to determine whether the intrastate rate is lawful." The PSC observed that the FCC had not provided a definitive answer to the question whether a CAP such as GLC was a CLEC for purposes of the federal access charge rule, i.e., 47 CFR 61.26 (*Id*.). The PSC stated as follows:

> The federal access charge rule contains a definition of "CLEC," and there is simply no avoiding the fact that that definition describes a carrier that "provides some or all of the interstate exchange access services used to send traffic to or from an end user." 47 CFR 61.26(a)(1). While the federal rule does not contain a definition of "end user," the Commission is convinced that under federal law (like state law) a telecommunications provider would not be considered an end user. *See, e.g.*, 47 CFR 69.2(m). To ignore the requirement that the carrier be sending traffic "to or from an end user" would be to ignore a fundamental component of that definition, and to render that part of the federal rule surplusage, that is, language that does not add meaning. This would explain why, in the *CAF Order*, the FCC seems to indicate that it has not yet dealt with the issue of access rates for all carriers.

As noted above, after the PSC entered its order, the FCC entered its decision in which it held that GLC was a CLEC for purposes of 47 CFR 61.26. The FCC found, based on its determination that GLC was a CLEC, that the interstate rates charged by GLC and WTC were unlawfully high. The DC Circuit affirmed the PSC's decision. The FCC's decision directly contradicts the conclusion on which the PSC based its decision, and thus calls into question the PSC's finding that complainants' intrastate rates, which matched the interstate rates, were lawful.

The PSC has no authority to pass on the validity of an FCC decision. The federal courts of appeal have exclusive jurisdiction to determine the validity of all final FCC orders. 28 USC 2342(1). At this juncture, the PSC's interpretation of 47 CFR 61.26 contradicts that of the FCC; furthermore, the PSC's decision is based on an interpretation of 47 CFR 61.26 that the FCC has ruled is erroneous. Had the PSC interpreted 47 CFR 61.26 in the same manner as did the FCC, it is very likely that the PSC would have reached the opposite conclusion. Accordingly, we vacate the PSC's decision and remand this matter to allow the PSC to reconsider its decision in light of the decisions of the FCC and the DC Circuit.

In addition, AT&T argues that the PSC erred by refusing to order complainants to refund to AT&T overpayments in excess of $815,000 complainants collected on behalf of LECMI. It is undisputed that WTC's bills to AT&T included a charge for some services by LECMI that LECMI never provided. Further, under a multi-party agreement, WTC acted as a billing agent and passed to LEMCI some portion of the funds received from AT&T. On appeal, WTC does not argue that AT&T is not entitled to recoup the amount it paid for services that were not performed. Instead, the dispute centers on what party, WTC or LEMCI, should issue a refund or credit to AT&T. Complainants state that WTC stands ready to issue a credit to AT&T when LECMI grants consent for such action, which to date it has not done. In the proceedings below the PSC did not examine whether under the multi-party agreement WTC can be required to reimburse AT&T for the monies WTC collected for LECMI's wrongful charges regardless of LECMI's willingness to reimburse WTC. Instead, the PSC concluded that AT&T was required to pursue LECMI to obtain a refund, and that AT&T should have made LECMI a party to the action and asserted a claim for the funds wrongfully paid to LECMI.[8]

We remand to the PSC on this issue. On remand, the PSC shall determine the scope of WTC's liability based on the multi-party contract, i.e., determine whether WTC has an independent duty under the multi-party agreement to reimburse AT&T for the amounts improperly charged by LECMI regardless of whether LECMI consents to cover the reimbursement.

CONCLUSION

We vacate the PSC's decision and remand this matter for reconsideration in light of the decisions made by the FCC and the DC Circuit, and for consideration on the merits of AT&T's argument that it is entitled to recoup the funds it paid for services not performed by LEMCI.

Vacated and remanded for further proceedings consistent with this opinion. Stay lifted. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[8] Presumably, the PSC concluded that AT&T should have filed a third-party complaint against LECMI or joined LECMI as a necessary party. MCR 2.204(A); MCR 2.205(A).

-8-