*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Application of DTE ELECTRIC COMPANY for Approval of Facility.

---

MICHIGAN ENVIRONMENTAL COUNCIL, NATURAL RESOURCES DEFENSE COUNSEL, and SIERRA CLUB,

        Appellants,

v

DTE ELECTRIC COMPANY,

        Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION and ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY,

        Appellees.

UNPUBLISHED
February 7, 2019

No. 344031
MPSC
LC No. 00-018419

---

*In re* Application of DTE ELECTRIC COMPANY for Approval of Facility.

---

ENVIRONMENTAL LAW & POLICY CENTER, ECOLOGY CENTER, SOLAR ENERGY INDUSTRIES ASSOCIATION, UNION OF CONCERNED SCIENTISTS, and VOTE SOLAR,

        Appellants,

v

No. 344033

DTE ELECTRIC COMPANY,

        Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION
and ASSOCIATION OF BUSINESSES
ADVOCATING TARIFF EQUITY,

        Appellees.

---

Before:  CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

These consolidated appeals arise out of the Michigan Public Service Commission (PSC) granting "certificates of necessity" (CONs) to DTE Electric Company (DTE) for the construction of a new 1,100 megawatt (MW) power plant at a cost of almost $1 billion, to replace several coal-powered plants that are scheduled to close.  CONs are essentially pre-approvals of the need or propriety of major utility projects, investments, or purchases.  Appellants are a variety of intervenors in the matter below, who contend generally that the PSC erred in granting the CONs. We affirm.

## I.  STANDARD OF REVIEW

We emphasize at the outset that we are forbidden to substitute our own judgment for that of the PSC.  *Attorney General v PSC No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). However, we review questions of law de novo, although with "respectful consideration" given to an agency's interpretation of a statute.  *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103, 108; 754 NW2d 259 (2008).  An aggrieved party must "show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable."  MCL 462.26(8).  "Unlawful" means that "the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment."  *Giaras v PSC*, 301 Mich 262, 269; 3 NW2d 268 (1942).  " 'Unreasonable' is a word of art in our jurisprudence and means arbitrary, capricious, or totally unsupported by admissible and admitted evidence."  *Associated Truck Lines, Inc v PSC*, 377 Mich 259, 279; 140 NW2d 515 (1966).  Courts accept an agency's factual findings if they are supported by "substantial evidence," which must be "more than a scintilla" but need not be a preponderance.  *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994).

## II.  CERTIFICATES OF NECESSITY

Certificates of necessity (CONs) are governed by MCL 460.6s.  Utilities may request several different kinds of CONs under MCL 460.6s(3); in relevant part:

(a) A certificate of necessity that the power to be supplied as a result of the proposed construction, investment, or purchase is needed.

(b) A certificate of necessity that the size, fuel type, and other design characteristics of the existing or proposed electric generation facility or the terms of the power purchase agreement represent the most reasonable and prudent means of meeting that power need.

* * *

(d) A certificate of necessity that the estimated purchase or capital costs of and the financing plan for the existing or proposed electric generation facility, including, but not limited to, the costs of siting and licensing a new facility and the estimated cost of power from the new or proposed electric generation facility, will be recoverable in rates from the electric utility's customers subject to subsection (4)(c). [MCL 460.6s(3).]

Under MCL 460.6s(4), the PSC is required to hold a contested case hearing on a utility's CON application, inquiring into the reasonableness and prudence of the proposed project, and issue an order granting or denying the application within 270 days. MCL 460.6s(4) further provides that the application shall be granted if the PSC finds five enumerated criteria satisfied:

(a) That the electric utility has demonstrated a need for the power that would be supplied by the existing or proposed electric generation facility or pursuant to the proposed power purchase agreement through its approved integrated resource plan under section 6t or subsection (11).

(b) The information supplied indicates that the existing or proposed electric generation facility will comply with all applicable state and federal environmental standards, laws, and rules.

(c) The estimated cost of power from the existing or proposed electric generation facility or the price of power specified in the proposed power purchase agreement is reasonable. [ . . . ]

(d) The existing or proposed electric generation facility or proposed power purchase agreement represents the most reasonable and prudent means of meeting the power need relative to other resource options for meeting power demand, including energy efficiency programs, electric transmission efficiencies, and any alternative proposals submitted under this section by existing suppliers of electric generation capacity under subsection (13) or other intervenors.

(e) To the extent practicable, the construction or investment in a new or existing facility in this state is completed using a workforce composed of residents of this state as determined by the commission. This subdivision does not apply to a facility that is located in a county that lies on the border with another state. [MCL 460.6s(4).]

MCL 460.6s(11) sets forth certain requirements for the PSC to mandate in integrated resource plans (IRPs[1]) from utilities.

### III. BACKGROUND

On July 31, 2017, DTE filed an application seeking three CONs for a proposed 1,100 MW natural gas combined cycle (NGCC) electric power plant. Specifically, DTE sought CONs (1) that the power to be supplied was needed, (2) that the proposed facility was the most reasonable and prudent means of meeting that need, and (3) that the almost $1 billion cost of the project would be recoverable in rates from DTE's customers. DTE's application was prompted by the imminent retirement of eight coal-fired power plants, which DTE predicted would incur a loss of approximately 1,822 MW of capacity. The PSC described the ensuing proceedings as generating "a record that is more voluminous than usual." Ultimately, it found that DTE's presentation suffered from various flaws and improprieties, but that DTE nevertheless satisfied its burdens of proof. The PSC therefore granted all three requested CONs.

Insofar as we can determine, only ABATE directly challenged the retirement of the coal plants *per se*, and therefore DTE's need for the power, before the PSC. Although ABATE has filed an appearance in this appeal, it has done so as an appellee rather than an appellant, and in any event it has not submitted a brief or argument. The remaining appellants' arguments are somewhat opaque and seemingly conflate the three CONs, but we can discern no coherently-expressed dispute whether there was a need for the power to be supplied. Likewise, we perceive no coherently-expressed dispute whether the cost of the project would be recoverable in rates from DTE's customers. Consequently, we treat the PSC's issuance of the first and third CONs as undisputed, and we are constrained to accept them as outside the scope of our review.

The effective basis of the instant appeal is, therefore, limited to whether DTE's proposed NGCC plant is "the most reasonable and prudent means of meeting the power need relative to other resource options for meeting power demand, including energy efficiency programs, electric transmission efficiencies, and any alternative proposals submitted." MCL 460.6s(4)(d). Appellants generally present three arguments: (1) that the PSC improperly shifted the burden of proof from DTE as the applicant to the intervening parties; (2) that the PSC inadequately considered alternative possibilities that could defer or partially displace the necessity of the new plant; and (3) that the PSC erroneously found DTE to have satisfied its burden of showing the

---

[1] Historically, the PSC has described IRPs as essentially long-range, holistic, and potentially complex plans created by utilities; seeking to predict future energy needs, taking into account both supply-side and demand-side resources and a multitude of other possible complicating factors such as social or environmental scenarios, and set forth how the utility proposes to meet those needs. See *In re Consumers Power Co*, Case No. U-9172 (March 29, 1990), pp 23-25. Pursuant to 2016 PA 341, the Legislature enacted statutory IRP guidelines in MCL 460.6t. However, the PSC determined that because DTE's application predated the PSC's issuance of guidelines and procedures under both MCL 460.6s and MCL 460.6t, DTE's application would be evaluated pursuant to only MCL 460.6s. Appellants do not challenge that determination.

proposed plant to be the most reasonable and prudent option. We will address these concerns in turn.

## IV. IMPROPER BURDEN SHIFTING

Pursuant to MCL 460.6s(4), the instant matter was "conducted as a contested case" under the Administrative Procedures Act (APA), MCL 24.201 *et seq*. MCL 460.6s does not expressly prescribe a burden of proof except in subsection (4)(a), which requires "the electric utility [to] demonstrate[] a need for the power that would be supplied." Nevertheless, "[g]enerally, in contested cases under the APA, the proponent of an order or petition has the burden of proof and the burden of going forward." *Bunce v Secretary of State*, 239 Mich App 204, 216; 607 NW2d 372 (1999). We therefore accept the parties' imposition upon DTE of the burden of proving all factual prerequisites for issuing a CON. Additionally, by default, "the requisite standard of proof in administrative proceedings is generally the same as that used in civil cases—a preponderance of the evidence." *Id*. at 218. We therefore also accept the PSC's imposition upon DTE of a preponderance standard.

Consequently, DTE was required to establish by a preponderance of the evidence that, in relevant part, its proposed NGCC plant "represents the most reasonable and prudent means of meeting the power need relative to other resource options for meeting power demand." MCL 460.6s(4)(d).

It is possible to understand DTE's obligation as requiring it to affirmatively prove every other possible option to be less reasonable or prudent, which in turn requires DTE to identify what every other possible option might be. This strongly resembles requiring DTE to "prove a negative," which is an exceedingly difficult endeavor. See, e.g., *People v Poindexter*, 90 Mich App 599, 609-610 n 4; 282 NW2d 411 (1979); *Coates v Drake*, 131 Mich App 687, 696; 346 NW2d 858 (1984). Where it is unavoidable that a party must undertake such an endeavor, courts have granted that party a degree of leeway or lenience in making its proofs. See *Taff v Hosmer*, 14 Mich 309, 315-316 (1866); *Davis v McMillan*, 142 Mich 391, 399, 401; 105 NW 862 (1905). Early in Michigan's history, our Supreme Court held that where it was incumbent on a party to prove a negative, "any proof which would raise a fair and reasonable presumption of" that negative "would be sufficient till overcome by some evidence tending to show [the affirmative]." *Young v Stephens*, 9 Mich 500, 504 (1862). Thus, a party may be permitted to make a prima facie case, whereupon it becomes incumbent upon the other party to rebut that prima facie case. *Hayes-Albion v Kuberski*, 421 Mich 170, 185-186; 364 NW2d 609 (1984).

Here, the PSC followed essentially the same procedure. It explained, in its order denying rehearing, that the burden of proof had been upon DTE, and that burden remained upon DTE throughout the proceedings. However, the PSC shifted the burden *of going forward* between the parties throughout the proceedings. The courts are familiar with this process: although the burden of persuasion generally remains with the plaintiff at all times, the burden of going forward with the evidence may shift throughout the proceedings. See *Widmayer v Leonard*, 422 Mich 280, 290; 373 NW2d 538 (1985). In light of our discussion above, we find nothing improper in the PSC adopting a procedure under which DTE may be permitted to make a prima facie showing, even an imperfect such showing, that its NGCC plant is the most reasonable and prudent option; whereupon opposing parties will be obligated to produce a meaningful showing

to the contrary. The PSC is within its discretion to consider the evidence proffered by the opposing parties to be unpersuasive. Furthermore, if a statute is silent on the matter, an agency may reallocate the burden of proof "when necessary and consistent with the legislative scheme." *Bunce*, 239 Mich App at 217.

To the extent appellants complain that the PSC's dispositional order failed to clearly articulate this procedure, we are sympathetic, but we do not find its deficiencies fatal. Courts look to the substance of matters rather than nomenclature or talismanic phrases. *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958); *In re Hensley*, 220 Mich App 331, 334; 560 NW2d 642 (1996). The PSC's opinion and order may be difficult to read for those not well-versed in its area of expertise. However, it is clear that the PSC recognized that the burden of ultimate persuasion was upon DTE, and that the PSC was required to make findings under a preponderance of the evidence standard. Throughout its order, the PSC extensively set forth the parties' various positions and summarized the evidence they had presented. Critically, the PSC explained *why* it ultimately agreed with DTE despite finding some serious deficiencies in DTE's proofs.

In short, it is readily apparent that the PSC found DTE to have established a prima facie showing of all necessary facts, and that the opposing parties had not convincingly rebutted that showing. Shifting the burden of production, and then finding opposing' parties production insufficient, does not inherently shift the burden of proof or persuasion. *In re Sprint Communications Co, LP, Complaint*, 234 Mich App 22, 40-42; 592 NW2d 825 (1999). The PSC's finding that DTE's presentation was flawed does not mandate a finding that DTE's presentation was insufficient, nor does it mandate a finding that opposing parties' presentation must be accepted. "In reality, [appellants' arguments] here [are] not so much about the allocation of the burden of proof as it is about the weight and sufficiency of the evidence." *Id*. at 42. We find that the PSC did not improperly shift the burden of proof; it simply found DTE's presentation to be persuasive despite its flaws, and it found appellants' presentation to be unpersuasive. There being some evidence in the record to support the PSC's findings, we are constrained to accept them. *In re Payne*, 444 Mich at 692.

## V. DEFERRAL OR PARTIAL DISPLACEMENT

Appellants contend that the PSC failed to undertake a proper consideration of "other electric resources that could defer, displace, or partially displace the proposed generation facility … including additional renewable energy, energy efficiency programs[2], load management, and demand response[3]" as required by MCL 460.6s(11)(f). Specifically, appellants argue that the

---

[2] "Energy efficiency" (EE), or "energy waste reduction" (EWR), refers to programs intended to encourage consumers to reduce their energy consumption through more efficient behavior, materials, equipment, or devices. For example, replacing incandescent bulbs with LED bulbs, or improving building insulation.

[3] "Demand response" (DR) refers to programs encouraging or incentivizing energy customers to reduce or shift their energy use at certain times.

PSC improperly focused on alternatives that would *completely* displace the proposed plant, while ignoring or minimizing evidence that the plant could be deferred, even in part. We find that appellants largely take statements by the PSC out of context.

The PSC observed that some modeling showed "that achieving 2% annual energy savings could defer the proposed plant by one year, to 2023." Appellants complain that the PSC improperly dismissed this finding on the grounds that "the 2% savings level . . . only defers [the plant] by one year." However, *in context*, the PSC went on to discuss more extensively that it did not believe a 2% annual energy savings was likely to be achievable, and that the evidence supported its doubtfulness. The PSC additionally noted:

> Ultimately, the Commission finds that a narrow window exists prior to the planned coal plant retirements that may not allow sufficient time for ramping up significant quantities of renewable energy, EE, DR, storage, or other options in order to completely displace the need for the proposed gas plant.

Again, *in context*, the PSC observed that the need for DTE's proposed plant was imminent, and "[e]ven if such options were feasible as a comprehensive portfolio to replace the gas plant under this timeframe, the cost is higher." Furthermore, "without replacement generation, there are potential operational reliability issues that could arise given the significant amount of generation retiring in a concentrated area." The PSC did find that alternate resources might be able to displace rather than defer a second plant potentially scheduled for 2029. However, "there is a need to proceed with construction [of the plant] in 2019 to ensure reliability as coal plants are retired." Implicit is a finding that partial deferral simply was not practical under the given time constraints.

Furthermore, DTE and the PSC accurately observe that MCL 460.6s(11)(f) requires only an *analysis* of alternative options. It does not impose any particular basis for denying a CON or an IRP based on the availability of those options or the outcome of that analysis. We cannot find that the PSC committed a mistake of law; and, again, there being some evidence in the record to support the PSC's findings, we are constrained to accept them. *In re Payne*, 444 Mich at 692.

## VI. THE MOST REASONABLE AND PRUDENT OPTION

Initially, "the power need" to which MCL 460.6s(4)(d) refers can only reasonably be understood as the *specific* need that the utility was required to establish under MCL 460.6s(4)(a). Similarly, a CON issued under MCL 460.6s(3)(b), that the facility "represent[s] the most reasonable and prudent means of meeting that power need," can only reasonably refer to a CON issued under MCL 460.6s(3)(a). Consequently, DTE is not required to show that its NGCC plant is *in the abstract* the most reasonable and prudent means of generating a given amount of power, or even any amount of power. Rather, DTE must show that its NGCC plant is the most reasonable and prudent means of satisfying the *particular* need for power established as a consequence of the imminent retirement of DTE's coal plants.

As noted, the power to be supplied by the proposed NGCC plant was necessary in the near future. Consequently, any analysis conducted by the PSC could only reasonably focus on meeting that need within narrow time constraints. The PSC specifically found that "any

recommendations for additional retirements, renewable energy, EE, DR, or additional fossil generation after 2022 are largely irrelevant to the issue of whether a CON should be granted for a plant that will begin construction in 2019 and is expected to begin operating in 2022." We agree, and we therefore reject appellants' arguments to the extent they suggest that the PSC erred in considering a short-term timeframe for approving the CONs. To the contrary, it would have been unreasonable for the PSC to consider options that would not meet the particular power need that DTE proposed to satisfy with its NGCC plant.[4]

Appellants also argue that DTE and the PSC failed to give sufficient or proper consideration to demand response, wind and solar energy production technology, transmission options, and improved energy efficiency savings even within the requisite timeframe. As they point out, the PSC itself found DTE's presentation to be highly dubious in some respects. However, our review is of the PSC, not of DTE. Furthermore, the PSC concluded that DTE's modeling assumptions were reasonable for the near future; its criticisms were largely of DTE's longer-range forecasts. We are not persuaded that appellants have shown more than a disagreement with the PSC's analysis.

Regarding battery storage technology, the PSC discussed testimony tending to show that the cost of battery storage was expected "to decline significantly over the next five years," and that the technology was developing rapidly. Furthermore, other utilities were including battery storage as resource options. However, testimony also indicated that those utilities had specific compelling reasons to do so, and despite those reasons, they were not planning to implement their battery storage until after the timeframe relevant to the instant plant. The PSC concluded that it was "not inclined to write off this emerging technology as lightly as DTE," but "f[ound] persuasive the company's testimony that the utilities that are planning the addition of utility-scale storage are not intending to do so until the mid-2020's or later." We note that a significant cost reduction in five years is well after the instant power need will manifest. We are not persuaded either that the PSC failed to give battery storage technology inadequate consideration, or that the PSC made an unreasonable finding of fact.

Regarding power transmission options, DTE opined that relying on transmission alternatives was risky and unreliable, because it would depend on energy capacity being available at a reasonable cost in nearby areas. Appellants essentially disagreed with the propriety of focusing on in-state generation to the exclusion of potentially less-expensive imported energy. The PSC specifically found DTE's analysis of transmission options to be "unnecessarily weak," but "technically" satisfactory. The PSC found that although DTE could have conducted a better investigation, it agreed that DTE would face difficulties and risks, especially because there did not appear to be any presently existing satisfactory options. Technical impediments, if any, to energy importation aside, it is clear that the PSC prioritized

---

[4] We note again that the PSC did properly find such considerations relevant to the second plant proposed for 2029. However, the second plant is not before us, and we express no opinion regarding the second plant.

reliability and certainty over unproven possibilities. We find nothing unreasonable in adopting such a prioritization.

Regarding wind and solar power generation options, testimony indicated that there was considerable "local community resistance," including a successful voter referendum, precluding installation of wind parks in the most appropriate areas for wind power generation. Although appellants cited studies indicating that the cost of installing wind generation might be lower than DTE's projections, DTE relied on its own actual experiences. The PSC accepted DTE's projections regarding wind generation. The PSC likewise accepted DTE's reliance on its own experiences with installation of solar energy production. Again, we find nothing unreasonable in the PSC deciding to prioritize first-hand experience and empirical data over theory and possibilities. Appellants complain that the PSC failed to consider "the gradual development of smaller solar and wind facilities." However, the PSC found that a smaller plant would be less economical than the 1,100 MW plant proposed, which, again, we do not find unreasonable.

Regarding energy efficiency (EE) and demand response (DR) savings, the PSC found it doubtful that DTE could actually achieve sufficient levels of either EE or DR to offset a significant amount of the necessary energy capacity. Notwithstanding criticisms of DTE's modeling, the PSC relied on testimony that very few utilities had successfully achieved a 2% EE savings level, and it had doubts that DTE could do so within the requisite timeframe. Likewise, the PSC found that DTE's inexperience with DR programs and "uncertainty surrounding customer receptivity" again cast doubt on DTE's ability to adequately ramp up its DR program within the requisite timeframe. To the extent appellants contend that the PSC's conclusions regarding EE and DR are unsupported by the evidence, we find nothing unreasonable about erring on the side of caution and certainty. Moreover, "[a]n agency may use its experience, technical competence and specialized knowledge in the evaluation of evidence presented to it." MCL 24.277.

DTE's burden of proof is a preponderance of the evidence, and to the extent DTE must "prove a negative," the PSC properly allowed DTE to make a prima facie showing and then impose upon opposing parties the burden of producing contrary evidence. A plain reading of the PSC's opinion shows that it made findings regarding all of the required issues. The PSC considered all of the alternative options and found that they were not realistically viable, under the circumstances, to meet *this particular* power need within the necessary timeframe. Based on the PSC's analysis and explanation regarding the various shortcomings or alternative considerations presented by appellants, it is evident that the PSC examined the criticisms levied, weighed their legitimacy and feasibility, and determined whether DTE had met its burden in light of the criticisms. In every instance, the PSC discussed the identified flaws; but ultimately, when it found in favor of DTE's analysis on a particular factor, the PSC placed the burden on DTE to meet the statutory burden of proof. Appellants essentially disagree with the PSC's findings, which is outside the standard of our review.

## VII. CONCLUSION

As discussed, we are not permitted to substitute our judgment for that of the PSC. We conclude that the PSC did not improperly shift the burden of proof by shifting the burden of persuasion after DTE made a prima facie showing. We are not persuaded that the PSC's order

granting the CONs at issue was unlawful or unreasonable. We therefore affirm. DTE and the PSC, being the prevailing parties, may tax costs. Although ABATE is listed as an appellee in the caption, we direct that ABATE may not tax costs, having not substantively participated in this appeal. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause